[Nos. 8474, 8475.]

THE ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY
v. BOWMAN.

1  RAILWAYS—*Interstate Commerce—Credit to Shipper.*   The result of the adjudicated cases is that credit may, notwithstanding the provisions of sec. 6 of the act of 1906 (34 Stat. at L. p. 587), be extended to the shipper.   It is unlawful only when given under circumstances, and to an extent, occasioning discrimination within the meaning of the statute.   (482.)

Each case must be determined upon its own facts. A credit is permissible when it is a business necessity or a matter of evident and great convenience, and does not amount to a discrimination. (482.)

Defendants desired to assemble in Denver a number of musicians in order to form a band. Many of them were in Mexico, some in Texas, and others in New York. How many could be induced to come to Denver, and from what points, could not at the time be determined, and defendants were without the necessary funds to provide for the transportation, in advance, or immediately upon completion of the service. It was hoped to have the musicians in attendance at the opening of a pleasure resort in the first week of June.

On May 20th, accordingly, a contract was made by which the railway company agreed to provide transportation for the musicians over its own and connecting lines, and the defendants agreed to compensate the railway company for this service, in weekly installments of $500.00. Transportation was furnished according to the contract, to the value of $2,000.00, in accordance with the tariffs filed with the Interstate Commission. *Held* that the contract suggested nothing of favoritism, and was unobjectionable. (478, 479, 483.)

2. STATUTES—*Construction.* A statute will not be so construed as to take away a common law right unless this result is required by the words thereof. (484.)

*Error to Denver District Court.* Hon. GEO. W. ALLEN, Judge.

`    ` *Department.*

Messrs. ROGERS, ELLIS & JOHNSON, Mr. PERCY ROBINSON, Mr. GARDINER LATHROP and Mr. ROBERT DUNLAP, for plaintiff in error.

MR. OTTO BOCK, MR. CLIFFORD I. W. MILLS and MR. WM. L. BOATRIGHT, for defendant in error.

Opinion by Mr. Justice TELLER.

The plaintiff in error, a railroad corporation with a line of railway running southward from Denver, entered into an agreement with the Denver Associated Concert Company to provide transportation for a number of band musicians from points in Mexico, New York, and Texas to Denver, to be paid for by the Concert Company at the rate of $500.00 per week till fully paid. It received from the Concert Company an order on its treasurer for payments as above stated.

J. E. Roach, one of the defendants below, and defendant in
error Bowman, were respectively President and Secretary-
treasurer of the Concert Company, and they, with one
Geiger, entered into a written contract whereby they guar-
anteed the payment of $500.00 per week on said bill of
transportation. The members of the band were brought to
Denver by the plaintiff in error at an expense of about
$2,000, as appears from the evidence. The Concert Com-
pany having failed for two weeks to make payment as
agreed, the plaintiff in error brought suit on the contract
of guaranty, and two weeks later a second suit was brought.
These suits were consolidated for trial, and the writs of
error sued out thereon have been treated as consolidated in
this court. Geiger, one of the defendants in the action, was
adjudged a bankrupt prior to the trial of the cause, and the
action was thereupon dismissed as to him. Defendant Roach
did not appear in the action, and his default having been
entered, the case proceeded against Bowman. An agreed
statement of facts was filed in the cause from which it ap-
pears that the plaintiff in error's charges for transportation
were in accordance with the tariffs filed under the Inter-
State Commerce Act. The case was tried to the court, and
judgment entered in favor of defendant Bowman, the court
refusing to enter judgment against Roach, who was in
default. On the oral argument in this court the case against
Roach was dismissed on motion of the plaintiff in error.

The trial court held the contract with the Concert Com-
pany void, the extension of credit being, in the court's view,
an act of "favoritism that is forbidden by the Inter-State
Commerce Law." That contract being found void, the guar-
anty was also held void.

Counsel for defendant in error contend that the exten-
sion of credit for which the contract provides is in violation
of section six of the act of 1906, (34 Stats. at Large p. 587.)
and do not, they say, rely on sections two and three of the

Inter-State Commerce Law of 1887, which are discussed at length in the opening brief for plaintiff in error.

The part of said section six, which is alleged to render the contract in question void, reads as follows:

"No carrier, unless otherwise provided by this Act, shall engage or participate in the transportation of passengers or property, as defined in this Act, unless the rates, fares, and charges upon which the same are transported by said carrier have been filed and published in accordance with the provisions of this Act; nor shall any carrier charge or demand or collect or receive a greater or less or different compensation for such transportation of passengers or property, or for any service in connection therewith, between the points named in such tariffs than the rates, fares, and charges which are specified in the tariff filed and in effect at the time; nor shall any carrier refund or remit in any manner or by any device any portion of the rates, fares, and charges so specified, nor extend to any shipper or person any privileges or facilities in the transportation of passengers or property, except such as are specified in such tariffs."

The contention that this section of the law is violated by the contract in suit is based on the fact that the passenger tariff schedules filed by the plaintiff in error, under the statute, make no provision for the extension of any credit. Counsel say that they do not contend that a railroad company can not under any circumstances extend credit, but that it cannot grant credit to one person, when it does not do so generally, and when the tariffs do not provide for credit. In support of this proposition counsel rely on *Hocking Valley Ry. Co. v. U. S.*, 210 Fed. 735, 127 C. C. A. 285, in which case the defendant was charged by indictment with violating the law by giving special concessions to one of its shippers. It appears that on making the monthly settlement with this shipper the railroad company accepted the ship-

pers note at four months, with interest at five per cent, in accordance with a previous arrangement; and that the note was renewed from time to time, and at last merged into three year debenture bonds. The Circuit Court of Appeals declined to consider the counts which charged a violation of the law in the acceptance of a "less or different compensation," and the extension of a "privilege in regard to transportation" not specified in the tariffs, and decided the case on the counts charging discrimination.

The court held that the railroad company was guilty of such discrimination as is prohibited by law when it gave one coal company "long credit" while requiring others to pay freight charges in cash on monthly settlements, and required such payments to be secured by bonds with sureties.

The case, therefore, is not decisive of the claim that a credit not provided for in the published tariffs is unlawful. The trial court, in that case, and the Circuit Court of Appeals in its opinion, recognized that short credits are sometimes a business necessity or a great convenience in railroad business, and the indictment recited the giving of such credits as the usual practice of the railroad company, the discrimination charged consisting in the long term credits, and the exemption from the requirement of a bond with sureties to secure payments.

Judge Killetts, the trial judge, said, (194 Fed. 244):

"As we have noted above, the deviation from cash collections, due to inconvenience and delay in carriage involved in collecting and accounting immediately for each shipment, out of which has arisen the custom of charging for prepaid freights to be settled monthly upon accounting for tare and other incidentals of the traffic, is apparent only. The transaction under these circumstances is substantially cash, to be considered as contemporaneous with the service."

In *Gamble-Robinson Commission Co. v. C. & N. W. Ry. Co.*, 168 Fed. 161, 94 C. C. A. 217, 21 L. R. A. (N. S.) 982,

16 Ann. Cas. 613, in deciding a case which arose after the act of 1906 went into effect, the Circuit Court of Appeals held that the common law right of a carrier to extend or refuse credit had not been taken away by the Inter-State Commerce Law, but does not refer to section six of said act. The holding was that the refusal to give to one shipper credit, while credit was given to other shippers, was not such unjust discrimination as the law prohibits.

The result of these decisions seems to be that some credit may be extended, and the extension becomes unlawful only when it is given under circumstances and to an extent which makes it discrimination within the meaning of the term as is used in the statute.

Each case must be determined, then, on its facts. A credit being permissible when it is a business necessity, or a matter of great and evident convenience, it must be determined in each case whether or not the credit is justified within the rule stated, and whether or not it amounts to discrimination such as the law forbids.

In this case the estimated total of fares was about $2,700; and this was to be paid at the rate of $500.00 per week,—a credit on the last payment of six weeks,—or an average credit of three weeks on the whole sum. Such credit was not strictly necessary as a business matter, but it was an evident convenience to the Concert Company and its officers. They wished to bring to Denver a considerable number of musicians to form a band, and many of these musicians were in Mexico, some were in Texas and three in New York. How many could be induced to come from Mexico, and from what points, could not be determined at the date of the contract; nor was the cost of the tickets from points in Mexico known to any of the parties to the contract. The Concert Company represented that it was necessary to have the band members come at once in order to be ready to play at the opening of a resort known as Luna Park during the first week in June.

Under these circumstances the contract was made, on May 20, 1911, and transportation furnished to the value of $2,000.

Upon careful consideration of this transaction it does not appear that it amounts to discrimination such as the law forbids. This is not such a case as is contemplated by the court in the language cited by counsel from *D. L. & W. Ry. Co., v. U. S.*, 231 U. S. 363, 58 L. Ed. 269, 34 Sup. Ct. 66. In that case the defendant was indicted for hauling over its lines its own goods, not necessary for its use as a common carrier. It was suggested that no one could be harmed by the act in question because the company could have purchased the goods at the place of delivery.

It was in connection with that suggestion that the language quoted was used. The act charged was prohibited in terms, and hence, of course, the question of its effect as discriminatory or otherwise was not involved.

In this case the giving of credit is not specifically prohibited, and it is only when credit is given under such circumstances as make it in effect a discrimination that it comes within the prohibition of the statute.

We are at liberty, then, to consider each case on the facts presented, and from them determine as to the lawfulness of the credit.

As the trial court stated, this case is *sui generis*. On the record the contract appears to be a plain business transaction. The officers of the Concert Company wished to bring the band members to Denver, and the company did not have funds sufficient to pay the men's fares and incidental expenses from their respective locations; nor was it known how many would come, from what points they would start, or how much the fares would be.

The plaintiff in error wanted to furnish so much of the transportation as its lines would provide. The arrangement to provide the transportation over connecting lines,

by telegraphic instructions to its agents in Mexico and elsewhere, was reasonable and natural; and suggests to us nothing in the nature of favoritism.

The plan being justified on a business basis, there is no reason to suppose that a similar arrangement would not be made with other persons under like circumstances.

The common law right to give credit being unquestioned, we ought not so to interpret the law as to abrogate that right, and deprive a carrier of compensation for services rendered in good faith, unless such interpretation is clearly necessary.

"A statute will not be construed as taking away a common law right existing at the date of its enactment, unless that result is imperatively required." *T. & T. Ry. Co. v. Abilene Cotton Oil Co.*, 204 U. S. 426-437, 51 L. Ed. 553, 9 Ann. Cas. 1075, 27 Sup. Ct. 350.

In the same case, at page 439, it is said:

"That the act to regulate commerce was intended to afford an effective means for redressing the wrongs resulting from unjust discrimination and undue preferences is undoubted. Indeed, it is not open to controversy that to provide for these subjects was among the principal purposes of the act."

We find no necessity nor reason for holding that the law is intended to prohibit a contract like the one in suit, and under the rule laid down by the Supreme Court of the United States, as above quoted, we must hold the contract in suit free from objection under the Inter-State Commerce Act.

It should be further considered that the defendant in error's contention, if sustained, leads to a violation of that provision of the statute which requires inter-state carriers to collect their tariff rates from all persons shipping or traveling over their lines.

It is evident that the requirement that the carrier collect fares according to its tariff rates, is as important a part

of the statute as is the provision against discrimination, or the acceptance of a rate less than or different from that prescribed in the published schedule.

This fact is material in the determination of a case where the invalidity of a contract for transportation is asserted only as an implication from positive provisions of the law.

The spirit of the statute does not justify the implication in this case. For the reasons above stated we are of the opinion that the court erred in finding for the defendant.

The judgment, in each of these cases, is reversed.

*Judgment reversed.*

Chief Justice GABBERT and Mr. Justice HILL concur.

Decided May 1, A. D. 1916. Rehearing denied July 3, A. D. 1916.