# DELAWARE, LACKAWANNA AND WESTERN RAILROAD COMPANY *v.* UNITED STATES.

## ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF NEW YORK.

No. 275.  Argued October 17, 1913.—Decided December 1, 1913.

The commodity clause of the Hepburn Act applies not only to the carrier's goods from point of production to the market but also to goods from market to that point.

While the power to regulate interstate commerce is subject to the provisions of the Fifth Amendment, an enactment, such as the commodity clause, which does not take property or arbitrarily deprive the carrier of a property right, does not violate that Amendment.

In dealing with interstate carriers, the fact that some of them are also engaged in private business does not compel Congress to legislate concerning them as carriers in such manner as not to interfere with such private business.

The commodity clause is general and, applies to all shipments, even if innocent in themselves, which come within its scope; its operation is not confined to particular instances in which the carriers might use its power to the prejudice of shippers.  Supplies, purchased for use in operating a carrier's mines, 75% of the product of which is intended for sale and only 25% intended for the carrier's own use, are not necessary for the conduct of its business as a carrier and fall within the prohibition of the commodity clause of the Hepburn Act.

Although the purchaser may have the right to rescind for a condition subsequent, title may pass on delivery; and so *held* in this case that title to hay purchased by, and delivered to, a railroad company, passed to it although payment was postponed until after inspection and acceptance.

THE facts, which involve the construction of the Commodities Clause of the Hepburn Act of June 29, 1906, are stated in the opinion.

*Mr. W. S. Jenney* for plaintiff in error:

The hay in question was not owned by the Railroad

Company during the transportation thereof from Black Rock to Scranton. The title to said hay did not pass to the Railroad Company until it accepted the hay after an inspection thereof at the mines.

The acceptance of goods by a buyer is necessary to completely transfer the title. 35 Cyc. 306; *Hershiser* v. *Delone*, 24 Nebraska, 380; *Stephens* v. *Santee*, 49 N. Y. 35; *Kein* v. *Tupper*, 52 N. Y. 550; *Cooke* v. *Millard*, 65 N. Y. 352; *Nichols* v. *Paulson*, 6 N. Dak. 400; *Hathaway* v. *O'Gorman*, 26 R. I. 476; *Smith* v. *Wisconsin Co.*, 114 Wisconsin, 151.

Where there is a contract to sell unascertained goods, no property in the goods is transferred to the buyer until the goods are ascertained (except in the case of a contract to sell an undivided share of goods). See § 17 of the Sales Act; Williston on Sales, § 258.

In every case the appropriation must have the assent of both parties, to transfer the property in the goods. See Williston on Sales, §§ 274, 277, 278; Mechem on Sales, §§ 721, 724, 726, 729, 730; Blackburn on Sales, p. 129; Benjamin on Sales, 5th ed., pp. 241, 346,

When the seller is required by the contract to deliver the goods to the buyer at some particular place, the presumption is, unless a contrary intention appears, that the property in the goods does not pass until the goods are delivered to the buyer at that place, and accepted by him. See § 19, Rule 5, of the Uniform Sales Act. See also Williston on Sales, § 280; Mechem on Sales, §§ 733, 736; Benjamin on Sales, 5th ed., p. 355; *Braddock Glass Co.* v. *Irwin*, 153 Pa. St. 440; *Dannemiller* v. *Kirkpatrick*, 201 Pa. St. 218; *McNeal* v. *Braun*, 53 N. J. L. 617; *Neimeyer Lumber Co.* v. *Burlington R. R. Co.*, 74 N. W. Rep. (Neb.) 670; *United States* v. *Andrews*, 207 U. S. 229.

Upon principle as well as upon the authority of the cases cited, the title to the hay did not pass to the Railroad Company until it accepted the hay after inspection at the

mines. *Cornell* v. *Clark*, 104 N. Y. 451; *Ballantyne* v. *Appleton*, 82 Maine, 570; *Potter* v. *Holmes*, 92 N. W. Rep. (Minn.) 411; *Cefalu* v. *Fitzsimmons*, 67 N. W. Rep. (Minn.) 1018; *Perkins* v. *Bell*, 1 Q. B. 193, 62 L. J. Q. B. 91.

Assuming, however, that the Railroad Company owned the hay in question during the transportation thereof over its railroad from Black Rock to Scranton, the Commodities Clause, in its application to such transportation, was unconstitutional because it deprived the Railroad Company of its liberty and property without due process of law, in violation of the Fifth Amendment.

The question here presented has not been passed upon by this court and was not covered by *Commodities Cases*, 213 U. S. 366.

The power to regulate commerce among the States is limited by the Fifth Amendment. *Gibbons* v. *Ogden*, 9 Wheat. 1; *Monongahela Nav. Co.* v. *United States*, 148 U. S. 336; *McCray* v. *United States*, 195 U. S. 27; *Adair* v. *United States*, 208 U. S. 161.

The limitations imposed by the Fifth Amendment upon the exercise by Congress of the power to regulate commerce are the same as those imposed by the Fourteenth Amendment upon the exercise of the police power by the state legislatures. Freund, Police Power, §§ 65, 66; *Twining* v. *New Jersey*, 211 U. S. 78, 101; *Carroll* v. *Greenwich Ins. Co.*, 199 U. S. 401, 410.

The Fifth Amendment forbids Congress, in the exercise of the power to regulate commerce, to arbitrarily, unreasonably or unnecessarily interfere with individual rights of liberty and property. The Commodities Clause is an arbitrary, unreasonable and unnecessary interference with such rights, and has no reasonable relation to the accomplishment of any legitimate public object. *Union Bridge Co.* v. *United States*, 204 U. S. 364; *Lochner* v. *New York*, 198 U. S. 45; *Martin* v. *District of Columbia*, 205 U. S. 135, 139; *Atlantic Coast Line* v. *North Carolina*

*Commission*, 206 U. S. 1, 20; *Hudson County Water Co.* v. *McCarter*, 209 U. S. 349.

The Commodities Clause, in its application to the facts of this case, is arbitrary, unreasonable and unnecessary, in that it has no reasonable relation to the accomplishment of any legitimate public object. For the legislative history of the act, see *Haddock* v. *D., L. & W. R. R. Co.*, 4 I. C. C. 296, and *Coxe* v. *Lehigh Valley R. R. Co.*, 4 I. C. C. 535.

The Commodities Clause, in its application to the facts of this case, deprived the Railroad Company not only of its liberty but also of property. *Allgeyer* v. *Louisiana*, 165 U. S. 589; *New Haven R. R. Co.* v. *Int. Comm. Comm.*, 200 U. S. 361.

The last case cited undoubtedly pointed the way to Congress in the enactment of the Commodities Clause. Cong. Rec., Vol. 40, pp. 6618–23, 6680–86, 6693, 6757 and 6758.

The history of the act shows that the discrimination which it was the purpose of Congress in enacting the Commodities Clause to stamp out was that which a railroad company could cover up and conceal by the commingled accounts of the two kinds of business, commercial and transportation, and not the transportation by a railroad company of materials lawfully purchased and owned by it, not for sale, but for use in the operation of property owned by it.

That kind of discrimination is entirely absent from such transportation. It cannot exist in connection therewith, because the Railroad Company does not deal commercially in the commodities so transported.

In this case the transportation by a railroad company of its own commodities to its mines for use in the operation thereof, is free from any evil that might justify the absolute prohibition of such transportation in the public interest.

In fact, it is a matter of complete indifference to the public, and every individual shipper, and every one of its competitors in the coal business whether or not the Railroad Company does or does not engage in such transportation, so long as it continues lawfully to own and operate its mines, and the Commodities Clause in prohibiting such transportation has no reasonable relation to the accomplishment of any legitimate public object, but is arbitrary, unreasonable and unnecessary and violates the Fifth Amendment.

*Mr. Assistant to the Attorney General Todd* for the United States:

The defendant was the owner of the hay while transporting it from Black Rock to Scranton. *Alden* v. *Hart*, 161 Massachusetts, 576; *Allen Bethune & Co.* v. *Maury*, 66 Alabama, 10; *Ballantyne* v. *Appleton*, 82 Maine, 570; *Boothby* v. *Plaisted*, 51 N. H. 436; *Burrows* v. *Whitaker*, 71 N. Y. 291; *Cefalu* v. *Fitzsimmons*, 67 N. W. Rep. 1018; *Chi., I. & L. R. Co.* v. *United States*, 219 U. S. 486; *Cornell* v. *Clark*, 104 N. Y. 451; *Crofoot* v. *Bennett*, 2 N. Y. 258; *Fogle* v. *Brubaker*, 122 Pa. St. 7; *Fromme* v. *O'Donnell*, 124 Wisconsin, 529; *Gass* v. *Astoria Veneer Mills*, 121 App. Div. (N. Y.) 182; *Graff* v. *Fitch*, 58 Illinois, 375; *Grimoldby* v. *Wells*, L. R. 10 C. P. 391; *Hatch* v. *Standard Oil Co.*, 100 U. S. 124; *Holmes* v. *Gregg*, 66 N. H. 621; *In re Company Material*, 22 I. C. C. 439; *Kelsea* v. *Haines*, 41 N. H. 246; *Kuppenheimer* v. *Wertheimer*, 107 Michigan, 77; *Leonard* v. *Davis*, 1 Black (U. S.), 476; *Lingham* v. *Eggleston*, 27 Michigan, 324; *Louis. & Nash. R. Co.* v. *Mottley*, 219 U. S. 467; *Macomber* v. *Parker*, 13 Pick. (Mass.) 175; *McCarty* v. *Gordon*, 16 Kansas, 35; *McCulloch* v. *Maryland*, 4 Wheat. 316; *McNeal* v. *Braun*, 53 N. J. L. 617; *Murphy* v. *Sagola Lumber Co.*, 125 Wisconsin, 363; *Perkins* v. *Bell*, 1 Q. B. (1893) 193; *Pierson* v. *Crook*, 115 N. Y. 539; *Pope* v. *Allis*, 115 U. S. 363; *Potter*

v. *Holmes*, 92 N. W. Rep. 411; *Riddle* v. *Varnum*, 20
Pick. (Mass.) 280; *Star Brewing Co.,* v. *Horst*, 120 Fed.
Rep. 246; *United States* v. *Andrews*, 207 U. S. 229; *United
States* v. *Sunday Creek Coal Co.*, 194 Fed. Rep. 252;
*Wadhams* v. *Balfour*, 32 Oregon, 313; *Weil* v. *Stone*, 69
N. E. Rep. (Ind.) 698; *Young* v. *Winkler*, 14 Colo. App.
204.

The Commodities Clause is constitutional as applied
to the transportation by a railroad, also engaged in pro-
duction, of articles owned by it and intended for use in
its operations as a producer. Hence, it is constitutional
as applied to the transportation by defendant of the hay
in question. *Booth* v. *Illinois*, 184 U. S. 425; *Cedar Hill
Co.* v. *Atchison &c. Ry.*, 15 I. C. C. 75; *Commonwealth*
v. *Gilbert*, 160 Massachusetts, 157; Encyc. Sup. Court,
vol. 11, p. 111, n. 23; *Knoxville Iron Co.* v. *Harbison*,
183 U. S. 13; *Lemieux* v. *Young*, 211 U. S. 489; *New Haven
R. Co.* v. *I. C. C.*, 200 U. S. 361; *Opinion of the Justices*,
163 Massachusetts, 589; *Otis & Gassman* v. *Parker*, 187
U. S. 606; *Powell* v. *Pennsylvania*, 127 U. S. 678; *Public
Clearing House* v. *Coyne*, 194 U. S. 497; *Purity Extract Co.*
v. *Lynch*, 226 U. S. 192; *Scott* v. *Reid*, 10 Pet. 524; *Silz*
v. *Hesterberg*, 211 U. S. 31; *Slaughter House Cases*, 16
Wall. 36; *St. Paul Ry. Co.* v. *Phelps*, 137 U. S. 528; *Swift*
v. *United States*, 196 U. S. 375; *United States* v. *Del. &
Hud. Co.*, 213 U. S. 366; *United States* v. *Goldenberg*, 168
U. S. 95; *United States* v. *Lehigh Valley R. Co.*, 220 U. S.
257.

Mr. Justice Lamar delivered the opinion of the court.

The Delaware, Lackawanna & Western Railroad Com-
pany was indicted for hauling, over its lines, between
Buffalo, New York, and Scranton, Pennsylvania, twenty
carloads of hay, belonging to the Company, but not neces-
sary for its use as a common carrier. This transportation

was charged to be in violation of the Commodities Clause of the Hepburn Act, June 29, 1906, c. 3591, 34 Stat. 585, which makes it unlawful "for any railroad company to transport in interstate commerce any article . . . it may own . . . or in which it may have any interest . . . except such . . . as may be necessary . . . for its use in the conduct of its business as a common carrier."

On the trial it appeared that the defendant was not only chartered as a Railroad, but had also been authorized to operate coal mines. The hay, referred to in the indictment, had been purchased for the use of animals employed in and about the mines at Scranton—all the coal taken therefrom being sold for use by the public, except the steam coal which was used as fuel for the Company's locomotives.

The defendant was found guilty and sentenced on each of the twenty counts. It brought the case here, insisting that the Commodities Clause violated the Fifth Amendment; deprived the Company of a right to contract, and prevented it from carrying its own property needed in a legitimate intrastate business, conducted under authority of a charter granted by the State of Pennsylvania, many years before the adoption of the Hepburn Bill.

1. This contention must be overruled on the authority of *United States* v. *Delaware &c. Co.*, 213 U. S. 366, 416. It is true that the decision in that case related to shipments of coal from mine to market, while here the merchandise was transported from market to mine. But the statute relates to "all commodities, except lumber, owned by the Company" and includes inbound as well as outbound shipments. Both classes of transportation are within the purview of the evil to be corrected and, therefore, subject to the power of Congress to regulate interstate commerce. The exercise of that power is, of course, limited by the provisions of the Fifth Amendment.

(*Monongahela Co.* v. *United States,* 148 U. S. 312, 336; *McCray* v. *United States,* 195 U. S. 27; *Union Bridge Co.* v. *United States,* 204 U. S. 364), but the Commodities Clause does not take property nor does it arbitrarily deprive the Company of a right of property. The statute deals with railroad companies as public carriers, and the fact that they may also be engaged in a private business does not compel Congress to legislate concerning them as carriers so as not to interfere with them as miners or merchants. If such carrier hauls for the public and also for its own private purposes, there is an opportunity to discriminate in favor of itself against other shippers in the rate charged, the facility furnished or the quality of the service rendered. The Commodities Clause was not an unreasonable and arbitrary prohibition against a railroad company transporting its own useful property, but a constitutional exercise of a governmental power intended to cure or prevent the evils that might result if, in hauling goods in or out, the Company occupied the dual and inconsistent position of public carrier and private shipper.

It was suggested that the case is not within the statute because, as the Company could buy, in Scranton, hay that had already been transported over its line, no possible harm could come to anyone if it brought the same hay at Buffalo and then hauled it to Scranton for use at the mine, but not for sale in competition with other dealers in stock food. But the courts are not concerned with the question as to whether, in a particular case, there had been any discrimination against shippers or harm to other dealers. The statute is general and applies not only to those particular instances in which the carrier did use its power to the prejudice of the shipper, but to all shipments which, however innocent in themselves, come within the scope and probability of the evil to be prevented.

2. In this case the hay was purchased for use in operat-

ing mines where 75 per cent. of the coal produced was "assorted sizes" intended to be sold for domestic purposes. The remaining 25 per cent. was steam coal—all of which was used as fuel on the Company's locomotives. This steam coal was in the nature of a by-product from a mine operated primarily for the purpose of obtaining coal for sale. Hay purchased for use in such mining cannot be said to have been necessary for the use of the Company in the conduct of its business as a common carrier.

3. Lastly, it was contended that the hay did not belong to the Railroad Company at the time of the transportation and, therefore, the conviction should be set aside since the statute only prohibits the hauling of commodities owned by the carrier.

This contention is based upon the terms of the contract, by which the Vassar Company, of Millington, Michigan, agreed to sell to the Railroad Company 3,000 tons, No. 1, timothy hay, at $15.40 per ton, f. o. b. Buffalo, payment to be made as follows: Upon the delivery of the hay to the purchaser, at Buffalo, same will be transported by the purchaser to various points on its line of railroad to be determined by the purchaser, at which places the purchaser shall have the right to inspect such hay before acceptance, and if upon such inspection said hay shall prove to be of the kind specified, the purchaser shall accept such hay and pay for the same within 30 days after such acceptance. Each of the twenty carloads of hay mentioned in the indictment was received by the Company at Buffalo. Each was then reconsigned to itself at Scranton. The waybills were marked "Freight free—Co. use." After arrival at Scranton it was inspected, accepted and used.

On these facts the defendant insists that the title did not pass until after acceptance, and many authorities are cited to support the proposition that, in a contract for the sale of personal property not only delivery by the

seller, but acceptance by the buyer, is necessary for the transfer of title. But there are two kinds of acceptance— one of quality and the other of title. They are not necessarily contemporaneous. There may be an acceptance of quality before delivery, as where goods are selected by the purchaser—delivery and transfer of title being postponed until a later time. Or, there may be an acceptance of title without an acceptance of quality; so that in many cases, after the title has passed, the purchaser may recover damages if the goods, upon inspection, prove to be of a quality inferior to that ordered. *Day* v. *Pool,* 52 N. Y. 416; *Zabriskie* v. *Central R. R.,* 131 N. Y. 72; *Bagley* v. *Cleveland Co.,* 21 Fed. Rep. 159 (3), 164; *Miller* v. *Moore,* 83 Georgia, 684. Again, though there may be such an acceptance as will transfer the title, the purchaser may, under the contract, have the right to rescind, as for a condition subsequent, if the goods do not correspond with the specifications. Such was the case here. When the hay was received by the purchaser at Buffalo there was such an acceptance as to transfer title to the Railroad, which accordingly took possession and exercised control in fixing when and to what point on its line the hay should be shipped. Title *prima facie* passes when delivery is made and if such possession followed by acts of ownership did not transfer the title to the Railroad Company, it left the risk of unknown dangers, at unknown points, for an indefinite time, upon the seller. So hard and unusual an incident is not, under facts like these, necessarily to be implied from the use of the ambiguous phrase, "pay after inspection and acceptance," and no such construction should be given unless demanded by the explicit terms of the contract. The parties, by their conduct, showed that they did not understand that the hay remained the property of the seller after it had been delivered to the buyer, for the hay after being received was consigned by the Company to itself and went

forward from Buffalo to Scranton on waybills containing the entry "Freight free—Company use." If the hay did, in fact, then belong to the Vassar Company, such a shipment on such a waybill would have been a departure from the published tariff, contrary to the provisions of the Act to Regulate Commerce. No such offense however was committed, for the contract, both by its terms and in the light of ·the conduct of the parties, meant that the title should pass when delivery was accepted by the defendant at Buffalo, but that the Railroad Company might rescind if, on later inspection, the quality was found to be different from what had been described in the contract of sale. But after such delivery and before such rescission, the title was in the Railroad Company. *Allen* v. *Maury,* 66 Alabama, 10; *Burrows* v. *Whitaker,* 71 N. Y. 291; *Kuppenheimer* v. *Wertheimer,* 107 Michigan, 77. As the hay belonged to the defendant and was intended for use in its private business of mining, the transportation over its lines, in interstate commerce, was a violation of the Commodity Clause.

*Judgment affirmed.*