LEO L. D'UTASSY, Respondent, *v*. SOUTHERN PACIFIC COMPANY, Appellant.

First Department, November 3, 1916.

Carriers — railroads — liability of carrier for cotton destroyed while delivered for compression — bill of lading and interstate commerce rules construed — indication by shipper of particular compressing company — when no stoppage in transitu.

A bill of lading for cotton delivered by the plaintiff's assignor to the defendant for shipment in an uncompressed state provided for absolute liability on the part of the carrier, with the exception that the carrier should not be liable for the destruction of the goods if they were stopped and held in transit at the request of the shipper or owner. It appeared that the schedules filed by the defendant under the Interstate Commerce Act allowed it, for its own benefit, to compress cotton received for transportation, which, by greatly reducing the bulk of the goods, facilitated the carriage thereof, and that a much lower rate of freight was charged for transporting compressed cotton than for uncompressed cotton. The rules governing interstate shipments of cotton provided that if a shipper desired his goods to be carried uncompressed he should give notice thereof by inserting that fact in the bill of lading, otherwise the carrier in its discretion had the right to compress the goods at the place of origin, or in transit, or at the destination. The shipper paid the lower rate of freight charged for compressed cotton, and noted upon the bill of lading that it was "To be compressed at Cleveland Compress Co., Houston, Tex.," which was not the place of shipment.

The goods when in the hands of the compressing company indicated by
    the shipper were destroyed by a general conflagration, which was not
    attributable either to the negligence of the carrier or the compress com-
    pany.   In an action to recover the value of the goods,
*Held*, that under the circumstances the shipper, by indicating a particular
    compress company upon the bill of lading, merely made a suggestion to
    the carrier not binding upon it within the terms of the contract of car-
    riage, so that the shipper did not make the carrier his agent in this
    respect.
*Held, further*, that the arrest of the cotton at the place at which it was
    to be compressed was not a stoppage *in transitu* so as to bring the
    shipment within the exception as to liability contained in the bill of
    lading, and that the carrier under its contract was liable for the value
    of the goods destroyed.
McLAUGHLIN, J., dissented, with opinion.

APPEAL by the defendant, Southern Pacific Company, from
a judgment of the Supreme Court in favor of the plaintiff,
entered in the office of the clerk of the county of New York on
the 24th day of June, 1915, upon the verdict of a jury rendered
by direction of the court, and also from an order entered in
said clerk's office on the 25th day of June, 1915, denying
defendant's motion for a new trial made upon the minutes.

*J. Ard Haughwout* and *Everett J. Esselstyn* for the
appellant.

*Arthur W. Clement* and *Wilson E. Tipple* for the
respondent.

SCOTT, J.:

There is no controverted question of fact in the case, and
but a single question of law.   The action is upon a bill of
lading issued by defendant; plaintiff, as assignee, suing to
recover the value of a shipment of cotton destroyed by fire at
Houston, Tex.   The following are the conceded facts.

On February 3, 1912, at El Centro, Cal., the firm of Daly
Brothers & Gage delivered to defendant, a common carrier,
forty-five bales of cotton for transportation to New Orleans.
The bill of lading was in what is known as the uniform form
and on its face provided for absolute liability on the part of
the carrier, subject, however, to an exception to be presently
considered.   The written parts of the bill of lading were filled
in by a member of the consignor firm, who wrote on the

face of the bill the words: "To be compressed at Cleveland Compress Co., Houston, Tex." It is upon the effect of these words that the case turns. After the bill of lading had been thus filled out it was presented to defendant's agent at El Centro and signed by him, whereupon the cotton was shipped. When it arrived at Houston it was sent to the Cleveland Compress Company's plant for compression, and while there it was destroyed by a fire which consumed not only the compression plant but also a considerable portion of the city. It is conceded that the cotton was thus destroyed without the intervention of or negligence on the part of either the carrier or the compress company.

When shipped the cotton was contained in what are known as plantation bales. The act of compression greatly reduces the bulk of the bales, which, after compression, are no more than one-third the original size. This compression is mainly, if not wholly, for the benefit of the carrier (*Matter of Concentration of Cotton*, 26 I. C. C. 585), and a much lower rate of freight is charged for the carriage of compressed than of uncompressed cotton.

The defendant, as required by the Interstate Commerce Act, had duly filed schedules showing all the rates, fares and charges for transportation, as well as " all terminal charges, storage charges, icing charges, and all other charges which the Commission may require, all privileges or facilities granted or allowed and any rules or regulations which in any wise change, affect, or determine any part or the aggregate of such aforesaid rates, fares, and charges, or the value of the service rendered to the passenger, shipper, or consignee." (See 24 U. S. Stat. at Large, 380, § 6, as amd. by 34 id. 586, § 2.)

The rate under which the cotton in question was shipped was ninety-five cents per 100 pounds, which according to the filed tariff of rates was applicable to " cotton in bales, compressed, minimum C. L. weight 20,000 lbs subject to storing-in-transit, compressing-in-transit and concentration-in-transit privileges as published in tariffs of individual lines lawfully on file with Interstate Commerce Commission. Note 1. Rate named includes charge of 10 cents per 100 lbs for compressing-in-transit."

·The shipment was also subject to the following duly filed and established "Rules and Regulations" governing the compressing of cotton on interstate shipments:

"1. A shipper desiring his cotton or cotten linters to be delivered at destination uncompressed, shall give notice of such desire by inserting in his bills of lading the notation 'to go through uncompressed,' or other plain words of similar import; and delivery will be made at destination accordingly. In such cases no part of the cost of compressing will be absorbed by these companies.

"2. Unless a bill of lading is indorsed 'to go through uncompressed,' as provided in Item 1, these companies will have the cotton or cotton linters compressed at origin, in transit, or at destination, at their discretion.

"The cost of such compression not to exceed ten cents per 100 pounds will be assumed by these companies, as provided in tariffs."

The shipment was also by the tariff made subject to the *printed* form of the uniform bill of lading.

In none of the filed schedules was there any provision giving to the shipper or owner of cotton to be compressed, the right or privilege of designating the particular place at which such compression was to take place.

It will be seen from the foregoing that the only option regarding compression which is accorded to a shipper is to require by indorsement on the bill of lading that the cotton shall be delivered uncompressed, in which case a much higher rate is charged. If the shipper does not so require, and elects to pay only the lower rate applicable to compressed cotton, as did the shipper in the present case, it is left wholly in the discretion of the carrier whether the compression shall take place at origin of the shipment in transit or at destination. It is conceded that if the bill of lading had been silent as to the place of compression, and the compression plant to which the cotton was intrusted and at which it was destroyed had been selected by the carrier without advice or instruction from the shipper, the defendant would have been liable for the loss under the terms of the bill of lading because in such case the act of compression would be considered as a part of the contract

of carriage, and the compressor would be deemed the agent of the carrier.

The claim of the defendant, however, is that by writing on the face of the bill of lading the words: "To be compressed at Cleveland Compress Co., Houston, Tex.," the shipper made that company his agent for the process of compression, and hence that when the cotton was destroyed its transportation and custody by defendant was interrupted and it was in the hands of the shipper's agent. The claim to exemption from liability on this score is predicated upon a condition in the bill of lading reading as follows: "Except in case of negligence of the carrier or party in possession (and the burden to prove freedom from such negligence shall be on the carrier or party in possession), the carrier or party in possession shall not be liable for loss, damage, or delay occurring while the property is stopped and held in transit upon request of the shipper, owner or party entitled to make such request."

The contention is that the arrest of the cotton at Houston for the purposes of compression by the compressor specified by the shipper presented a case of a stoppage and holding in transit upon request of the shipper, owner or party *entitled to make such request.* The trial justice held that this clause applied only to a case of a technical stoppage *in transitu.* It may be, as defendant insists, that this limits the exemption too narrowly, but we are not concerned at present to precisely define its limits. It is sufficient to consider whether it applies to the facts of this particular case. The exemption applies only to a case in which the goods are stopped and held in transit upon the request of some person "entitled to make such request," that is to say by some person with whose request the carrier is bound to comply.

If the naming of the Houston compressing plant by the shipper amounted to nothing more than a suggestion on his part which the carrier might or might not regard at its option without violating its contract of carriage, the shipper was not a person "entitled to make such request," and the carrier, even though it complied with the request or suggestion, not being bound to do so, cannot claim exemption from liability because it so complied. It is very well settled that under the

Interstate Commerce Law it is not the bill of lading alone which constitutes the contract between the shipper and the carrier, but it is the bill of lading plus the schedules and tariffs filed as required by law. (*Am. Sugar Refining Co.* v. *Delaware, L. & W. R. Co.*, 207 Fed. Rep. 733.) Turning to the schedules filed by the defendant we find nothing conferring upon a shipper or owner of cotton any right to select the place at which his cotton is to be compressed. The only provision on the subject is that already quoted that the shipper may elect to have his cotton delivered uncompressed, and failing such an election, that the carrier may have such compression executed at origin, in transit or at destination, at its discretion. There is nothing, therefore, in the contract between the parties as expressed in the bill of lading and the filed schedules which imposed upon the defendant carrier any obligation to regard the wishes of the shipper, whether expressed by indorsement on the bill of lading or otherwise, as to the place of compression. The election of the Houston plant, therefore, whether influenced or not by the expressed preference of the shipper, must be considered as the voluntary act of the carrier in the exercise of the discretion which it had reserved to itself by its contract. Nor can it be said that by accepting the bill of lading with the indorsement upon it the carrier entered into a special enforcible agreement with the shipper outside of the contract embodied in the bill of lading and schedules for such an agreement by an interstate carrier is expressly forbidden by the Interstate Commerce Law (24 U. S. Stat. at Large, 380, § 6, as amd. by 34 id. 586, 587, § 2; Elkins Act [32 U. S. Stat. at Large, 847, chap. 708], § 1, as amd. by 34 id. 587, § 2) as interpreted by the court of highest authority (*Chicago & Alton R. R. Co.* v. *Kirby*, 225 U. S. 155; *Kansas Southern Railway* v. *Carl*, 227 id. 639, 653), and it is immaterial that it is not shown that the shipper was interested in the Houston plant, or would gain any advantage not common to other shippers, by having the cotton compressed at that place. (*Delaware, L. & W. Railroad Co.* v. *United States*, 231 U. S. 363.)

The judgment appealed from must be affirmed, with costs.

CLARKE, P. J., DOWLING and SMITH, JJ., concurred; McLAUGHLIN, J., dissented.

McLaughlin, J. (dissenting):

I am unable to concur in the prevailing opinion. The bill of lading was made out by the shipper, who wrote across its face the words, "To be compressed at Cleveland Compress Co., Houston, Tex." It was then signed by an agent of the defendant and the cotton shipped. The bill of lading constituted a contract between the shipper and the railroad company and when the latter accepted the cotton for shipment it did so under the terms of the bill of lading — one of which was that the shipment was to be stopped and the cotton delivered to the Cleveland Compress Company at Houston, Texas, for compression.

It may be conceded that in none of the schedules filed was there a provision giving to the shipper of cotton to be compressed the right of designating the particular place at which such compression should take place, but that fact was as well known to the shipper as to the railroad company. When the shipper, therefore, designated the place it was for the railroad either to refuse to accept the shipment on the terms stated, or else to deliver the cotton at the place designated. It accepted the cotton and carried out the terms of the bill of lading by delivering it for compression at the place the shipper had selected. Before it had been compressed and returned to the railroad company it was destroyed, without the latter's fault, by fire. It was, in effect, a stoppage and holding in transit upon the request of the shipper, and thus the defendant was exempted from liability under the condition in the bill of lading which provided "except in case of negligence of the carrier or party in possession, * * * the carrier or party in possession shall not be liable for loss, damage or delay occurring while the property is stopped and held in transit upon request of the shipper, owner or party entitled to make such request."

I think, the facts being undisputed, that the judgment should be reversed and the complaint dismissed.

Judgment and order affirmed, with costs.