## CRESCENT INSULATED WIRE & CABLE CO., Inc., v. PRATT CHUCK CO.

Circuit Court of Appeals, Second Circuit. April 4, 1927.

No. 254.

**Sales ⬡⟹200(3)—Title to machines held not to pass on successful tests in buyer's plant, but only on buyer's acceptance after tests (Personal Property Law N. Y. § 144).**

Where agreement for sale of machines consisted of buyer's offer to purchase, seller's telegram, "We understand your telegram to mean that, if machines work as satisfactorily under operation of our man in your plant as on test just made, you will accept, ' * * * '" and buyer's reply that seller's understanding was correct, *held*, title did not pass on installation of machines in buyer's plant and their successful operation there, but only on the buyer's acceptance after such tests, and hence action for purchase price was not maintainable in absence of acceptance, though it was wrongfully withheld, in view of Personal Property Law N. Y. (Consol. Laws, c. 41) § 144.

In Error to the District Court of the United States for the Northern District of New York.

Action by the Pratt Chuck Company against the Crescent Insulated Wire & Cable Company, Inc. Judgment for plaintiff, and defendant brings error. Reversed, and new trial ordered.

Writ of error to a judgment of the District Court for the Northern District of New York in favor of the plaintiff in an action at law for the purchase price of machines sold and delivered.

The plaintiff, a manufacturer of armored wire cable at Oneida, New York, was the owner of six machines, which it had formerly used in that business, but which it later wished to sell. The defendant was a manufacturer of the same goods at Trenton, New Jersey, and to it the plaintiff sought to sell the machines. In subsequent negotiations employees of the defendant went to the plaintiff's factory, examined the machines, and saw them in operation. Nothing was concluded, but the negotiations continued and eventually the defendant offered to buy the machines if they operated satisfactorily. The plaintiff was not sure that the machines could make up the defendant's material, and therefore asked the defendant to send some

coils of its own metal strip. This was done, the plaintiff used them, and reported the result. The defendant expressed itself as satisfied and a contract was made.

This was closed in three telegrams which in substance were as follows: The defendant wired: "Result of your test would seem quite satisfactory, but our purchase is dependent upon like results after installation in our factory with this. * * * We confirm offer machines to be shipped your earliest convenience via Pennsylvania Railroad Company freight." The plaintiff answered: "We understand your telegram to mean that if machines work as satisfactorily under operation of our man in your plant as on test just made you will accept and immediately pay for machines." The defendant then replied that the plaintiff's understanding was correct.

The plaintiff shipped the machines to Trenton and at the defendant's request sent on an employee to make a test. When he arrived four of the machines were already set up. He made a test which was not satisfactory, but he was hampered, as he said, in the material and accessories furnished him. Long delays ensued, from May till October, and there was evidence that the defendant wished to be rid of, though it did not repudiate, the bargain. At length, at its request the plaintiff sent its employee again to Trenton at the end of October, and found the machines in bad repair, attributed by him to the defendant's mishandling. Finally, on November twenty-sixth, more than six months after delivery, the employee made a test, at which, however, he was unable to secure the attendance of any of the defendant's employees. The result of this test was the subject of much controversy on the trial, and the plaintiff argued that the evidence showed it to have been as good as that which had been made at Oneida. In any case the defendant did not approve it or accept the machines, and about two weeks later repudiated the contract.

The judge charged the jury that if the results of the Trenton trial were in fact as good as those reached at Oneida, the title had passed, and the action lay for the purchase price. The jury so found, and judgment entered for the plaintiff on the verdict.

Robert B. Honeyman, of New York City, for plaintiff in error.

James F. Hubbell, of Utica, N. Y., for defendant in error.

Before MANTON, HAND, and SWAN, Circuit Judges.

HAND, Circuit Judge (after stating the facts as above). This being an action for the purchase price, and the case not falling within any of the exceptions in section 144 of the New York Personal Property Law (Consol. Laws, c. 41), it was necessary to prove that the title had passed. The buyer argues that the final exchange of telegrams did not leave as the sole remaining condition to the passage of title the conformity of the trial at Trenton with that at Oneida. He argues that it still was incumbent upon the seller to satisfy him that the machines would work at satisfactory speed, would satisfactorily manufacture the standard of cable required by the board of underwriters, and would in other respects be satisfactory. Hence he insists that the case is within section 100, rule 3, subd. 2, of the New York Personal Property Law, and that without his acceptance, or other adoption of the transaction, title did not pass. We shall for the purpose of argument assume that the buyer was already satisfied with the machines, provided that they worked at Trenton as satisfactorily as they had at Oneida. Nobody suggests that the title passed on delivery or on installation, and plainly it did not; it was subject to a condition precedent. Therefore, taking the seller's position as correct, the question remains whether that condition was the machines' performance, or the buyer's acceptance. We are not met with the vexatious question whether there has been an acceptance of title, subject to a condition subsequent, if the goods fail to conform to the description or to a warranty. That is the difficulty dealt with in such cases as Delaware, L. & W. R. Co. v. U. S., 231 U. S. 363, 34 S. Ct. 65, 58 L. Ed. 269, and Glass & Co. v. Misroch, 239 N. Y. 481, 147 N. E. 71. In the case at bar, the parties had agreed that title should not pass except either upon the actual results of the trial, or upon the buyer's "adopting the transaction" by something equivalent to "approval" or "acceptance."

After considerable search we have not been able to find any case near enough to serve as a precedent, and we are forced to construe the contract as it seems to us to read. There are indeed many decisions where the seller agrees unconditionally that the buyer shall be satisfied, but these are not in point, and the statute expressly covers that situation in any event. Assuming that the seller did not have to satisfy the buyer generally, did he have to satisfy him at all? Did he have to do more than make the machines perform as they had at Oneida? We need not pass on whether the buyer was bound to accept, if the performance was in fact the same. Perhaps so, perhaps as regards this limited feature the buyer was not free unreasonably to reject. We do not therefore say that this was the usual "satisfaction" contract so far as the buyer's obligations were concerned, for we are dealing only with the question whether he had become the owner. He may have wrongfully refused to become so, and still have successfully rejected the title.

We think that the intention was that he should accept the performance on the second trial as equal to that on the first before the title passed. For this conclusion we rest both upon the language used and the situation of the parties. The word, "satisfactorily," selected by the seller himself can scarcely mean anything in this connection but "satisfactorily to the buyer." Of course, it does not mean "satisfactorily to the seller," and, if it means "satisfactorily to any reasonable person," it adds nothing. It would have been as well to say, "turn out the same product," which we cannot accept as an equivalent. Even had that been used, we should say that the phrase still presupposed an inspection by the buyer and his acceptance. It was quite unnecessary if he was not to pass upon the result, to have the trial take place in his factory. This could only have been stipulated because he wished to see the product and to compare it with what he had received from Oneida. While he had inspected the machines there, and had indeed seen them operate, that was not the trial he demanded. The Oneida trial with his own strip he had never seen, and even though there remained nothing open to him but the comparison of the Oneida product with the Trenton the natural conclusion from his position is that, before the machines were to become his, he should pass upon their product made where he was to make it. This had become, under the seller's interpretation, the hinge upon which the bargain turned. He naturally did not wish to have the title forced upon him until he had had the chance to determine for himself whether they came up to the standard he had fixed. This conclusion is corroborated by the provision that he should "accept" them. As we have said, the case is not one where a preliminary acceptance of ownership can be contrasted with acceptance of performance. There was to be no period during which the buyer was to be owner with a power of rejection. Hence it seems impossible to give any meaning to acceptance, unless it was acceptance of title.

It is not necessary to hold that this was a

sale on "trial" within the meaning of section 100, rule 3, subd. 2, though we think it was. At best that rule is no more than a guide in our search for the parties' intention. Section 99. We base our conclusion not only upon it, but upon the whole setting. While we must therefore reverse the judgment for the purchase price, the plaintiff may amend its complaint so as to sue for damages, or under section 144, subd. 3, if it thinks it can prove a case under either. All questions which may come up upon the issues arising under other pleadings are to be deemed open upon another trial.

Judgment reversed and new trial ordered.