LAMPMAN–WERTS CORPORATION *vs.* OLNEYVILLE COAL AND WOOD CO.

JANUARY 23, 1928.

PRESENT: Sweetland, C. J., Stearns, Rathbun, Sweeney, and Barrows, JJ.

STEARNS, J. Assumpsit to recover the contract price of eighty-eight tons of coal bought by defendants, copartners, from plaintiff, a wholesale coal dealer. After a jury trial and a verdict for plaintiff for $532.80, the case is here on defendants' exceptions taken to parts of the charge to the jury and to the refusal to charge as requested. There is no substantial contradiction in the evidence.

In 1925 there was a strike in the anthracite coal fields. Plaintiff was seeking to sell soft coal from a mine in West Virginia as a substitute for anthracite. In September plaintiff's salesman went to defendants' office in Olneyville, showed a sample of his coal and sold them two carloads of "semi-anthracite" coal at $6 a ton F. O. B. at the mine. Defendants told plaintiff that their trade was retail for domestic use and plaintiff assured them that this coal was suitable for such use. Defendants knew nothing of this variety of coal; in fact, it never had been used before in this State.

The first carload arrived in Providence September 30. The coal was very soft, contained much dust and was not of the size ordered. Defendants at once wrote to plaintiff and objected to the coal on account of the size and the quality. About October 7, to avoid payment of demurrage to the carrier, defendants received the first carload and stored it in their yard. The second carload reached Providence a few days later. The president of plaintiff corporation came to Providence and, after inspecting the coal, assured defendants if they would accept it plaintiff would make them a "worth price" on it. Defendants then took over the second carload. After defendants had sold four or five tons in small quantities, the purchasers complained to them and to the State fuel administrator, that the coal was so smoky and gaseous that it could not be used in kitchen ranges or heaters. The fuel administrator, after an investigation, notified defendants and their customers that this coal was unfit for domestic use in this State. Plaintiff apparently does not question the correctness of this decision, but does claim the coal can be used if special

dampers are installed in ranges or special instruction for use is given to householders. This coal cost defendants when delivered to customers $13 a ton. As it could no longer be sold for domestic use, defendants were obliged to sell it to shops and laundries at prices ranging from $8 to $12 a ton. Plaintiff never made any reduction in the price but brought this suit for the full contract price of $6 a ton.

The trial justice charged the jury that, as soon as the buyer found the quality was not as represented, it was his duty to notify the seller and hold the coal subject to its orders; that it could not be sold without the seller's orders, and, if it was, the buyer must pay the full market price; that if, after complaint was made, plaintiff agreed that defendants might pay the "worth price," they must pay that price; and as there was no evidence of what the "worth price" was, or what that expression meant, defendants, who had the burden of proving a definite agreement for a reduction of price and who had failed to establish such agreement, were bound to pay the wholesale market price in the open market.

These instructions were erroneous and the exceptions thereto are sustained. There was ample evidence of a breach of warranty, either express or implied by the seller. Under the provisions of the Sales Act (G. L. 1923, C. 309, s. 7) the buyer had the right to elect any one of several remedies for the breach of warranty: The buyer could (a) accept or keep the goods and set up against the seller the breach of warranty by way of recoupment in diminution or extinction of the price; or (b) accept or keep the goods and maintain an action against the seller for damages for the breach of warranty. Defendants chose to accept the goods after notifying the seller of the defect in quality. Such an acceptance does not discharge the seller from liability in damages or other remedy for breach of warranty. 2 Williston on Sales, sec. 484. As stated in *D. L. & W. R. R.* v. *United States*, 231 U. S. 372: "There are two kinds of acceptance—one of quality and the other of title. They

are not necessarily contemporaneous. There may be an acceptance of quality before delivery, as where goods are selected by the purchaser—delivery and transfer of title being postponed until a later time. Or, there may be an acceptance of title without acceptance of quality; so that in many cases, after the title has passed, the purchaser may recover damages if the goods, upon inspection, prove to be of a quality inferior to that ordered (citing cases). Again, though there may be such an acceptance as will transfer the title, the purchaser may, under the contract, have the right to rescind, as for a condition subsequent, if the goods do not correspond with the specifications."

In the case at bar there was an acceptance of title but not of quality. Defendants were entitled to set up by way of recoupment damages for the breach of warranty of quality in diminution or extinction of the price. The measure of damages is such loss, in the absence of special circumstances showing proximate damages of a greater amount, as is the difference between the value of the goods at the time of the delivery to the buyer and the value they would have had if they had answered to the warranty. (Sec. 7 (6) (7).) So far as appears, defendants sold the coal for the best price they could get. Their right of recoupment was not changed by the seller's offer to make a reduced price. The instruction to that effect was erroneous.

Defendants' request to charge the jury that if plaintiff knew the purpose for which the coal was bought, to be sold for domestic and household purposes, the plaintiff impliedly warranted that the coal was suitable for these purposes, was refused. This was error and the exception on this point is sustained. The coal was sold by sample as well as by description and in the circumstances, even if there was no express warranty, there was an implied warranty that the coal was suitable for domestic use. (G. L. 1923, C. 305, ss. 14 and 15).

As there must be a new trial, it is unnecessary to consider other exceptions.

Defendants' exceptions which have been considered are sustained. The case is remitted to the Superior Court for a new trial.

*Edward C. Stiness, Francis J. O'Brien,* for plaintiff.

*Jasper Rustigian, Curran, Hart, Gainer & Carr,* for defendant.