**HARRY WAGNER PRODUCTS CO., Inc. et al. v. ADAMS.**

No. 12491.

Court of Civil Appeals of Texas. Galveston.
March 26, 1953.

Rehearing Denied May 28, 1953.

Baker, Botts, Andrews & Parish, Wm. R. Brown, Robert K. Jewett, Alvin M. Owsley, Jr., Houston, for appellants.

Merrill & Scott, Sam R. Merrill, Houston, for appellee.

CODY, Justice.

Appellants contend they are entitled to recover the market value of certain caustic soda which, they insist, was unlawfully sequestered and sold by appellee. This contention is based upon a somewhat intricate structure of facts.

Prior to June 20, 1951, appellant Harry Wagner Products Company, Inc., of New York City, had obligated itself to deliver to a third party an amount of *flake* caustic soda in excess of 80,000 pounds. On that date, Wagner, acting through Crescent Chemical Sales, Inc., of New Orleans, contracted to purchase from Earl A. Brownhill (who was a defendant below) 80,000 pounds of *flake* caustic soda, at 8¢ per pound, and telegraphed to Brownhill,

who lives in Houston, $6,400. Brownhill did not have the soda which he had contracted to sell, and he expended the $6,400, so paid him by appellant Wagner, for other purposes. Thus before June 23, 1951, Brownhill had become liable to Wagner for 80,000 pounds of caustic soda, or for damages for failure to deliver same.

On June 23, 1951, appellee Adams, who lives in Laredo, Texas, owned 111 drums of *solid* caustic soda, which were located in Houston, and were in the possession of a truck line. (Each such drum contained 725 pounds of such soda.) And on that day, by long distance telephone, from the office of the Security State Bank in Houston, Brownhill called Adams in Laredo, and represented to him that he needed Adams' soda immediately to fill an order. He further represented to Adams that the money to pay him therefor was then in transit to him (Brownhill), care of the Security State Bank, and when it was received at said Bank, would be used to pay Adams. The president of said bank was then caused by Brownhill to assure Adams that upon receipt of the money, the bank would notify Adams thereof. Brownhill further agreed with Adams to give to Adams' agent in Houston a check drawn on said bank, to cover the price of said soda (at 8¢ per pound), which would be paid out of the money which was so represented by Brownhill then to be in transit from New York. Adams thereupon authorized his agent in Houston to deliver the aforesaid solid caustic soda to Brownhill, which was done, by delivering 85 drums thereof to H. L. Ziegler, Inc. (who was defendant below), upon the docks in Houston. At this point we digress to state that the remaining 26 drums of solid caustic soda so sold to Brownhill were duly paid for by him and we are not here concerned with said 26 drums of solid caustic soda.

At this point it is proper to state that, under the oral contract made by Brownhill (through the agency of aforesaid Sales Company of New Orleans with Wagner as aforesaid), Brownhill was to deliver the 80,000 pounds of flake caustic soda to the aforesaid Ziegler Company, for the account of Wagner. We might here add that, by the terms of said oral contract, the 80,000 pounds of flake caustic soda were to be delivered for the account of Wagner in 200 drums weighing 400 pounds each. And it was in an attempt to perform his contract with Wagner for the purchase of 80,000 pounds of *flake* caustic soda, that Brownhill caused the 85 drums of solid caustic soda to be delivered to the Ziegler Company.

The Ziegler Company, in Houston, at once notified the Sales Company in New Orleans, of the delivery of the 85 drums of solid caustic soda, containing 725 pounds each, instead of the 80,000 pounds of flake soda, in 200 drums of 400 pounds each. The court found as a fact the Sales Company did not thereafter accept said soda, "which remained upon the docks subject to the control of Brownhill." It seems undisputed that Wagner could not use said solid soda to discharge its obligation to the aforesaid third person to whom it had contracted to sell flake soda.

In point of fact, Wagner had not placed the money in transit to Brownhill, care of the Security State Bank, as Brownhill had so represented to Adams in order to induce him to give possession of the 85 drums of soda to Brownhill. Consequently, the money was never placed to the credit of Brownhill in the Security State Bank. So when the check given by Brownhill for the account of Adams was presented for payment, such payment was refused. In this connection it should be stated that the court found as a conclusion of fact that Brownhill had reason to believe, and did believe that the money would be placed in transit by Wagner. This finding was important in the main action by Adams against Brownhill, because he there alleged that Brownhill made the representation falsely, and knowing that it was false, in order to get the 85 drums of soda in his possession. That is to say, Adams in the main action, as against Brownhill, was claiming that Brownhill acquired the soda by theft by false pretext; and that consequently no title thereto passed out of Adams to Brownhill.

On June 28, 1951, Adams wired the Ziegler Company and the Lykes Brothers

Steamship Company to the effect that he had not been paid for the 85 drums of caustic soda, which were then located upon the Long Beach docks in Houston, and that he would hold each of them liable if same should be moved without his consent.

On June 29, 1951, in Houston, Adams agreed with Brownhill to accept his check, dated July 2, 1951, for $4,888.87, (being the balance due Adams from Brownhill) drawn on the City National Bank in Houston, and, according to the court's findings of fact, "left the said Brownhill in full control and possession of the soda on the dock, pending the presentation of the check for payment." On July 3, 1951, payment on aforesaid check so given to Adams was refused by the bank, and the bank notified Adams that it would not receive any further deposits from Brownhill. Upon the same day, Adams demanded possession of the 85 drums from the Ziegler Company, and from Lykes Brothers, and delivery was by them refused.

Thereupon Adams instituted sequestration proceedings against Brownhill, the Ziegler Company, and the Steamship Company for the possession and title of the 85 drums of caustic soda.

Appellee originally predicated his suit against Brownhill solely upon the theory that Brownhill only pretended to have an order for caustic soda, and falsely represented that money was then in transit to him from Wagner in New York, in order to get possession of the soda from Adams. In short, the theory of appellee's suit was theft from Adams by Brownhill by false pretext, whereby no title to said 85 drums of soda had passed.

Appellants Wagner, and the Sales Company intervened· in the suit, and sought judgment for title to the 85 drums of solid caustic soda, and to recover possession thereof. Since appellee Adams had caused the soda to be sold under the sequestration proceedings, appellants sought to recover damages from him for conversion. Appellants in the alternative sought judgment against Brownhill for $6,400. We deem it unnecessary to give any further details of the pleadings.

The case was tried to the court without the aid of a jury. The court· rendered judgment in effect releasing the Ziegler Company and the Steamship Company from liability. The court awarded judgment against Brownhill both in favor of appellee Adams, and the appellants Wagner and the Sales Company, who, as stated, intervened in the suit. The intervenors were denied any recovery against Adams. The amount of the recovery awarded intervenors, so far as need be here noted was based on their alternative claim to recover from Brownhill $6,400, plus interest.

The court, upon the request of intervenors, filed conclusions of fact and law. Intervenors excepted to certain of the court's conclusions, and alone have appealed. They base their appeal upon the following points.

(1) The undisputed and uncontradicted evidence established that appellants had accepted the soda delivered.

(2) Upon delivery of the soda title to the same passed to appellants subject to their right of rejection; which right of rejection they did not exercise, but they, on the contrary, accepted the soda.

We overrule appellants' aforesaid two points. The court in effect found as a fact that appellants rejected the 85 drums of solid caustic soda, as not being in compliance with the material which had been ordered by them from Brownhill. This finding of fact is sufficiently supported by the testimony of Mr. Brownhill to the effect that he was notified by the Ziegler Company (the forwarding company), to which Mr. Brownhill had been notified by appellants to make delivery, that the delivered soda was not acceptable. Brownhill further testified that on Monday, June 25, 1951, he called up Mr. Steen in New Orleans, from Houston, and that Mr. Steen confirmed the rejection of the soda upon the grounds, "It was not the material that he had requested, the drums were too large, and it was solid caustic soda." Mr. Steen was the president of the Crescent Sales Company, and was handling the matter for his company and the Wagner Company, who were interested in the matter on a fifty-fifty basis.

It is well settled we believe that when property is delivered by the vendor to a carrier or other agent of the vendee, as

directed by the vendee, delivery to such agent is a delivery to the vendee and passes title to him, subject, however, to a right in the vendee to rescind if the property is not in the condition as to quality or kind which the vendee, under the contract is entitled to receive. Alexander v. Heidenheimer, Tex. Com.App., 221 S.W. 942; Henry Glass & Co. v. Misroch, 239 N.Y. 475, 147 N.E. 71; Delaware L. & W. R. Co. v. United States, 231 U.S. 363, 34 S.Ct. 65, 58 L.Ed. 269; 37 Tex.Jur. 527. Under the rule of the cases just cited, in case the property is destroyed after such delivery has been made, the loss will fall on the vendee, because title to the property had passed to him, subject to re-scission under certain circumstances.

We have refrained thus far from stating that, according to the testimony of Steen, his company and the Wagner Company ordered from Brownhill two batches of 80,000 pounds of flake caustic soda. The first batch was ordered between June 15 and 20, 1951. Mr. Steen testified that he had known Mr. Brownhill for some years, and that when he placed the order with Brownhill for the first batch, he had requested that appellants advance the contract price of the soda ($6,400) to him, against the shipment. Steen testified that he agreed to do this if Brownhill would obtain and ship the ordered soda by Friday or Saturday, the 22nd or 23rd of June, 1951. And it was pursuant to this agreement that Steen caused the Wagner Company to wire the $6,400 to Brownhill. In the meanwhile, Steen, for the account of his own company and the Wagner company, ordered an additional shipment of flake caustic soda from Brownhill, and it was agreed that the payment therefor was to be made to Brownhill by the Wagner Company sending its check therefor to Brownhill. Steen testified that the amount of soda ordered in the second batch was also 80,000 pounds. It was the payment for the second batch of soda which Brownhill represented to Adams was in transit, in order to get the 111 drums of soda from Adams. When Brownhill made such representation, he knew that the payment for the second batch was not in actual transit, at that time. But the court found upon adequate evidence that Brownhill in

good faith believed that the payment would be transmitted to him through the Security State Bank by Monday, June 25, 1951, which was as soon as the check against said Bank could be presented. However, Steen learned by June 23, that Brownhill had not delivered the soda for which he had received the aforesaid payment of $6,400, and he instructed Wagner not to send the payment for the second batch of soda. Consequently, the payment for the second batch of soda had not been deposited in the Security State Bank when the check was presented, and payment of the check given by Brownhill for the account of Adams was refused.

It is no doubt true that, if the title to the 111 drums of soda had irrevocably passed out of Adams, and into Brownhill, then, when Brownhill delivered 85 drums thereof to the Ziegler Company, as forwarding agent for appellants, title thereto passed to appellants, subject to the right of rescission or rejection on the part of appellants, in case the soda did not comply with the agreed requirements. But under the contract of sale between Adams (appellee) and Brownhill, Adams was to receive cash for the soda he sold to Brownhill. And when payment on Brownhill's check on the Security State Bank, in favor of Adams, was refused, Adams had the right, as against Brownhill and those claiming under him otherwise than as innocent purchasers for value to rescind. 55 C. J., p. 576; 78 C. J. S., Sales, § 412, and authorities there cited. Under evidence hereinabove stated, the court had the right to conclude that appellants declined to accept delivery of the 85 drums of solid soda because same was not flake soda, and not contained in drums holding 400 pounds. Furthermore, before appellants sought to reverse their position, and thereafter to undertake to accept the soda, they had notice of appellee Adams' right in the 85 drums of solid soda. Certainly at that stage, appellants had no right to recoup their loss of $6,400, which they had sustained from Brownhill's failure to use said money to buy soda for appellants' account, at the expense of Adams, by taking the soda which he had sold to Brownhill for cash, and which appellants had obli-

194

gated themselves to pay Brownhill, but which they failed to pay him, and which caused Brownhill to default in paying Adams.

The evidence, as stated above, shows that on June 28, after Adams learned the check, drawn on the Security State Bank was not paid, he telegraphed the interested parties that he had not been paid for the 85 drums of soda, and that same belonged to him. On June 29, 1951, appellee had come to Houston, and he and Brownhill made a new arrangement. At that time Brownhill had sold 26 of the 111 drums of soda for cash, and paid the proceeds to appellee, leaving unpaid the sum of $4,888.87. For this sum Brownhill then gave Adams a check, postdated July 2, 1951, drawn on the City National Bank. As stated above, payment on this check was refused by the bank because Brownhill had insufficient funds on deposit, and the bank stated it would not accept deposits thereafter from Brownhill.

■■ There was nothing in this second attempt by Adams to get cash from Brownhill, which could strengthen appellants' claim to own the 85 drums of soda, or weaken the right of Adams to rescind, as against Brownhill and those claiming under him, who were not innocent purchasers for value. Under the facts found by the trial court, which we deem adequately supported by the evidence, the only risk which Adams ran, when he took the postdated check of July 2, 1951, was that Brownhill might thereafter dispose of the 85 drums of soda to innocent purchasers for value. Indeed, after appellants refused to accept delivery of the 85 drums of soda, and communicated such refusal to Brownhill, and Brownhill acquiesced in such refusal, appellants could not thereafter claim title thereto.

Since appellants alone have perfected an appeal from the judgment, and there is no question but that the pleadings of the intervenors, appellants here, together with those of the appellee are sufficient to present the issues adjudicated between appellee and appellants, we deem it unnecessary to further extend this opinion.

Judgment is in all things affirmed.