## CENTRAL VERMONT TRANSP. CO. v. DURNING, Collector of Customs.

### No. 200.

Circuit Court of Appeals, Second Circuit.

June 11, 1934.

Martin Conboy, U. S. Atty., of New York City (Samuel C. Coleman and Edward J. Ennis, Asst. U. S. Attys., both of New York City, of counsel), for appellant.

Wallace R. Foster, of New York City (Horace H. Powers, of St. Albans, Vt., of counsel), for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This appeal is by the defendant, collector of customs of the port of New York, from an

order which denied a motion to dismiss the bill of complaint and restrained him from seizing and forfeiting certain merchandise shipped on the Central Vermont Railway, Inc., at St. Albans, Vt., consigned to one Allen, at New York City, under a through bill of lading.

■ So far as the order appealed from denied the motion to dismiss the bill, it is not now subject to review because it is not final and the cause is still open for trial on the pleadings. We shall therefore review only the portion of the order which granted an injunction pendente lite.

The complainant Central Vermont Transportation Company was incorporated under the laws of Maine in 1908, and its stock, except certain directors' qualifying shares, was owned by the Central Vermont Railway Company, the stock of which was in turn owned by the Grand Trunk Railway Company, a Canadian corporation. In 1909, the complainant purchased two vessels, the New York and the New London, built in the United States and documented under the laws of the United States, and has continuously operated them between New London and New York. In 1923, the Canadian National Railway Company, also a Canadian corporation, acquired the Grand Trunk Railway Company. In 1929, the Central Vermont Railway, Inc., acquired the property of the Central Vermont Railway Company, and the Canadian National Railway Company acquired all the stock except directors' qualifying shares of the Central Vermont Railway, Inc. Central Vermont Transportation Company and Central Vermont Railway, Inc., are engaged in transportation of property partly by railroad and partly by water under common control for a continuous carriage between points in the states of Connecticut, Massachusetts, and Vermont and New York City and return by rail and by water. It also transports merchandise originating at points in the Western States which is routed over Canadian rail lines and thence over the Central Vermont and its connecting water carrier. All the merchandise transported in the boats New London and New York between points in the United States is transported over the whole or a part of a through route recognized by the Interstate Commerce Commission for which route tariffs have been filed with the Commission and such through route is in part over Canadian rail lines.

The merchandise involved in this proceeding moved by railroad from St. Albans, Vt., over 'the Central Vermont Railway, Inc., to New London, Conn., thence over the Central Vermont Transportation Company in one of its boats, the New York or the New London, to New York City, which transportation from St. Albans to New York is on a part of the through route herein described. While the merchandise was in the possession of the complainant under a through bill of lading, it was seized by the defendant as collector of customs for forfeiture under section 27 of the Merchant Marine Act of June 5, 1920. That act provides as follows:

"No merchandise shall be transported by water, or by land and water, on penalty of forfeiture thereof, between points in the United States, including Districts, Territories, and possessions thereof embraced within the coastwise laws, either directly or via a foreign port, or for any part of the transportation, in any other vessel than a vessel built in and documented under the laws of the United States and owned by persons who are citizens of the United States, or vessels to which the privilege of engaging in the coastwise trade is extended by sections 13 or 808: Provided, That this section shall not apply to merchandise transported between points within the continental United States, excluding Alaska, over through routes recognized by the Interstate Commerce Commission for which routes rate tariffs have been or shall be filed with said commission when such routes are in part over Canadian rail lines and their own or other connecting water facilities. * * *" U. S. Code, title 46, § 883 (46 USCA § 883).

■ The steamboats New York and New London are not owned by citizens of the United States. This fact is evident from the definition of section 38 of the Merchant Marine Act of 1920 which says that no corporation "shall be deemed a citizen of the United States unless the controlling interest therein is owned by citizens of the United States" and that "the controlling interest * * * shall not be deemed to be owned by citizens of the United States (a) if the title * * * is not vested in such citizens free from any trust or fiduciary obligation in favor of any person not a citizen of the United States. * * *" 46 USCA § 802.

The Central Vermont Railway, Inc., an American corporation, owns the stock of the Central Vermont Transportation Company, but in turn is owned by the Canadian National Railway Company, a Canadian corporation, so that the transportation company is not a citizen within the meaning of section 38 because, under that statute, intervening

holding companies make no difference and ultimate beneficial ownership controls. Such ownership is Canadian.

St. Albans, Vt., where the freight was shipped, is on a through route from western points in the United States to New York, which is in part over Canadian rail lines and their water carriers, and is recognized by the Interstate Commerce Commission as such. The Central Vermont Transportation Company filed tariffs with the Commission in its own name.

Approximately 33 per cent. of all freight transported in its steamboats is received from or destined to points in New England on the line of the Central Vermont Railway. The remainder comes from interior points in the west through Canada and thence over the lines of the Central Vermont Railway, Inc., to the boats of the Central Vermont Transportation Company. The transportation company has never employed its boats to carry traffic except as a part of a railroad operation.

Upon the passage of the Panama Canal Act (section 5, paragraphs 9–11 of the Act to regulate commerce [49 USCA § 5, pars. 10–12]), the Central Vermont Railway Company applied to the Interstate Commerce Commission for authority to own the stock of the transportation company and disclosed that substantially all its stock belonged to the Grand Trunk Railway Company. Subsequently, in 1930, the Central Vermont Railway, Inc., made a similar application, and the Canadian National Railway made application for leave to own the stock of Central Vermont Railway, Inc. Each of these applications was approved and declared to be in the public interest.

The District Court held that the shipment in question came within the proviso of section 27 of the Merchant Marine Act of June 5, 1920, and granted an injunction pendente lite accordingly. With this conclusion we cannot agree.

It is argued by the complainant that section 27 of the Merchant Marine Act does not apply to it or to the merchandise it transports because of the paramount jurisdiction of the Interstate Commerce Commission. This argument is sought to be enforced by the language of Section 33 of the Shipping Act of September 7, 1916, which reads:

" * * * This chapter shall not be construed to affect the power or jurisdiction of the Interstate Commerce Commission, nor to confer upon the board concurrent power or jurisdiction over any matter within the power or jurisdiction of such commission; nor shall this chapter be construed to apply to intrastate commerce." 39 Stat. 738 (46 USCA § 832).

Section 1, par. (1) (a) of the Interstate Commerce Act (41 Stat. 474, 49 USCA § 1 (1) (a) provides that such act shall apply to:

" "The transportation of passengers or property wholly by railroad, or partly by railroad and partly by water when both are used under a common control, management, or arrangement for a continuous carriage or shipment."

Section 6 (13), 37 Stat. 568 (49 USCA § 6 (13), provides that:

"When property may be or is transported from point to point in the United States by rail and water * * * the transportation being by a common carrier or carriers, and not entirely within the limits of a single State, the Interstate Commerce Commission shall have jurisdiction of such transportation and of the carriers, both by rail and by water, which may or do engage in the same, in the following particulars: * * *

"(b) To establish through routes and maximum joint rates between and over such rail and water lines, and to determine all the terms and conditions under which such lines shall be operated in the handling of the traffic embraced."

We can see no reason for supposing that the jurisdiction given the Interstate Commerce Commission "to establish through routes and maximum joint rates between and over such rail and water lines" is in any way in conflict with the later statutory requirements of section 27 of the Merchant Marine Act. The provisions are entirely compatible, relate to different matters, and may, without difficulty, be read together. The Interstate Commerce Act undoubtedly gives authority to the Commission to establish through routes and joint rates and, under section 5 (11), 37 Stat. 566 (49 USCA § 5 (12), to permit water carriers belonging to railroads, if operated in the interest of the public, to continue such operation under common ownership, though otherwise competing. But this jurisdiction does not affect carriage prohibited by section 27 of the Merchant Marine Act. Indeed, it is difficult to comprehend the force of the argument that the latter section is not applicable.

The complainant particularly insists that section 27 (46 USCA § 883) is not applicable because of the terms of the proviso. We

have demonstrated that the vessels involved in the case are not "owned by persons who are citizens of the United States" within the meaning of the act. It remains to determine whether, in spite of this, the proviso covers the situation here.

The proviso by its express terms only excepts "merchandise transported between points within the continental United States * * * over through routes recognized by the Interstate Commerce Commission for which routes rate tariffs have been or shall be filed with said commission when such routes are in part, over Canadian rail lines and their own or other connecting water facilities. * * * "

The complainant attempts to claim exemption under this proviso upon the theory that "over through routes" means "over" any part of such routes. This does violence to the language and defeats the purpose of the proviso as well.

The enacting clause of section 27 expresses a very old governmental policy. Chapter 2, § 5 (1 Stat. 24, 27), of the Act of July 4, 1789, of the First Congress, preferred vessels owned by our own citizens by allowing a discount on duties paid for goods imported in such vessels. Chapter 31, § 4, of the Act of March 1, 1817 (3 Stat. 351), prohibited importation of merchandise from one port of the United States to another such port in "a vessel belonging wholly or in part to a subject of any foreign power" under pain of forfeiture. Chapter 201, § 20, of the Act of July 18, 1866 (14 Stat. 182), aimed to prevent evasion of duties along the Canadian border, provided that merchandise carried from any port of our northern, northeastern, or northwestern frontiers in a foreign vessel to a foreign port and then reshipped to any other port of the United States on such frontiers in order to evade section 4 of the act of 1817, should be subject to forfeiture. This legislation was ameliorated by chapter 213, § 4, of the Act of March 1, 1873 (17 Stat. 483), so far as to permit subjects of Great Britain, without payment of duty, to carry merchandise in British vessels from one place in the United States to another upon the St. Lawrence river, the Great Lakes, and the rivers connecting the same, provided part of such transportation was through the Dominion of Canada by land carriage and in bond. R. S. § 4347. This local exemption in pursuance of the Treaty with Great Britain of May 8, 1871 (17 Stat. 873), was repealed March 3, 1883 (22 Stat. 641), upon the expiration of the treaty. Our legislative policy continued

without amelioration and indeed was stiffened by chapter 117 of the Act of February 15, 1893 (27 Stat. 455), which forbade shipments in foreign vessels from one port of the United States to another via a foreign port and by chapter 26 of the Act of February 17, 1898 (30 Stat. 248), which forbade shipments in foreign owned vessels from one United States port to another "either directly or via a foreign port, or for any part of the voyage." Section 1. As these provisions were thought not to cover transportation that was partly by water and partly by land (30 Opinions Atty. Gen. 3), the law was extended under section 27 of the Merchant Marine Act by adding the words "or by land and water" to existing provisions so as wholly to reserve coastwise trade for citizens of the United States. The bill as originally introduced did not contain the proviso and was calculated to disturb established routes between the Northwest and the East through the lake ports over water connections of Canadian rails to and from the Eastern markets.

The nature of the problem is shown by the decision of the Interstate Commerce Commission in Rail-Lake-and-Rail Rates between United States Points via Canadian Lines, 96 I. C. C. 633 (1925). There an attempt was made to suspend through rates established over Canadian routes, but the Commission held that American owned water routes such as from Duluth to Buffalo and then over American rails to Eastern points in the United States were insufficient to handle all the traffic and that it was advantageous to our trade to move from Duluth to Sarnia, Ontario, and from Chicago and Milwaukee to Depot Harbor, and then by Canadian and American rails to Eastern points. These foreign water routes through the Great Lakes, when recognized by the Commission, were intended to be exempted from section 27, and the bill, as first introduced, was amended by adding the proviso in order to exempt merchandise using these Canadian rail and connecting water routes.

It is evident that an interpretation of the proviso that would permit carriage in foreign owned vessels over *any part* of a through route would defeat the long-established policy of Congress. The proviso clearly related only to shipments over (and not merely on some part of) through routes and actually over a Canadian rail line. The single exception to our national policy allowed by section 27 and intended only to affect routes along the Great Lakes and the St. Lawrence river, if extended in the manner complainant de-

sires, would enable foreign owned vessels to carry merchandise on any of our own waters by the simple expedient of filing tariffs showing participation in routes exempted by the proviso.

While we regret the result we are forced to reach, we feel convinced that the merchandise here did not move over a through route that was "in part over Canadian rail lines and their own or other connecting water facilities," but, on the contrary, moved over a route that began in Vermont and ended in New York with no intervening Canadian rail lines at all. The provincial policy which prevents shipments made in New England from being carried on complainant's steamers is something we may deplore but cannot control. The exclusion of such freight from transportation is doubtless an inconvenience to many American customers of Central Vermont Railway, Inc., and a disturbance of a course of traffic that has been of long standing, but section 27 of the Merchant Marine Act seems to us clear and peremptory, and, on the face of the papers submitted on the motion for an injunction, the merchandise in question is subject to forfeiture.

Finally it is argued that the construction we have placed on section 27 violates the Fifth Amendment of the Constitution. We can see no basis for this contention. The transportation we are dealing with would always have been illegal but for the fact that the complainant was an American corporation and, prior to the enactment of section 38 of the Merchant Marine Act, control of its stock by a Canadian company would not have made the New York and New London foreign owned vessels. We cannot believe that statutory recognition that the beneficial ownership was in a Canadian corporation and that the steamboats were thereby foreign owned and thus within the prohibition of section 27 was beyond the powers of Congress. It did not involve the taking of the property of the complainant, for the latter was at liberty to sell its vessels at any time. Moreover, the Canadian National Railway Company could dispose of the stock of the Central Vermont Transportation Company if its steam boats could not be operated profitably when limited to carrying merchandise that came over through routes. The statutory restrictions here are no more severe than those prohibiting transportation by a railroad of its own commodities. Such legislation was sustained by the Supreme Court in Delaware, Lack. & West. R. Co. v. United States, 231 U. S. 363, 34 S. Ct. 65, 58 L. Ed. 269. See, also, Assigned Car Cases, 274 U. S. 564, 575, 47 S. Ct. 727, 71 L. Ed. 1204.

The order granting a preliminary injunction is reversed, and the appeal from the part of the order denying the motion to dismiss the bill of complaint is dismissed.