## THE TANAMO.

## THE SAGUA.

## UNITED FRUIT S. S. CORPORATION v. DURNING (two cases).

### Nos. 307, 308.

Circuit Court of Appeals, Second Circuit.

April 13, 1936.

Burlingham, Veeder, Clark & Hupper, of New York City (Roscoe H. Hupper and William J. Dean, both of New York City, of counsel), for appellant.

Lamar Hardy, U. S. Atty., of New York City (Edward J. Ennis, Asst. U. S. Atty., and Helen E. Cottrell, Sp. Asst. to U. S. Atty., both of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

Section 22 of the Merchant Marine Act of June 5, 1920, 41 Stat. 997, provides as follows: "That the Act entitled 'An Act giving the United States Shipping Board power to suspend present provisions of law and permit vessels of foreign registry and foreign-built vessels admitted to American registry under the Act of August 18, 1914, to engage in the coastwise trade during the present war and for a period of one hundred and twenty days thereafter, except the coastwise trade with Alaska,' approved October 6, 1917, is hereby repealed: Provided, That all foreign-built vessels admitted to American registry, owned on February 1, 1920, by persons citizens of the United States, and all foreign-built vessels owned by the United States at the time of the enactment of this Act, when sold and owned by persons citizens of the United States, may engage in the coastwise trade so long as they continue in such ownership, subject to the rules and regulations of such trade: Provided, That the board is authorized to issue permits for the carrying of passengers in foreign ships if it deems it necessary so to do, operating between the Territory of Hawaii and the Pacific Coast up to February 1, 1922."

The plaintiff's steamships Tanamo and Sagua were built in 1914 at Newcastle, England, and were respectively admitted to American registry on January 12, 1917, and February 3, 1917, pursuant to the Act of August 18, 1914 (46 U.S.C.A. §§ 11 and note, 82, 236). On February 1, 1920, they were owned by citizens of the United States within the meaning of section 38 of the Merchant Marine Act (46 U.S.C.A. § 802), that is to say, the corporation then

owning them was organized under the laws of one of our states, the president and managing directors were citizens of the United States, and 75 per cent. of the interest therein belonged to such citizens. But the Tanamo, between February 1, 1920, and February 19, 1934, and the Sagua, between February 1, 1920, and March 18, 1935, do not appear to have been owned by "citizens of the United States" within the statutory meaning. In 1935, however, they were so owned by the plaintiff, United Fruit Steamship Company, which, as such owner, applied for certificates of enrollment to the defendant as collector of the Port of New York in order that the vessels might engage in the coastwise trade. The collector refused to issue documents of enrollment, but issued certificates of registry with a restriction to the effect that they should not engage in the coastwise trade. The plaintiff then brought these suits to obtain declaratory judgments that it was entitled to certificates for the coastwise trade in unrestricted form.

The question for our determination is whether these foreign-built vessels, which, on February 1, 1920, were of American registry and were owned by citizens of the United States, must have had uninterrupted ownership by such citizens from that time in order to come within the words of section 22 of the Merchant Marine Act and to be entitled to certificates of enrollment for the coastwise trade.

The court below held that ownership by citizens of the United States must be uninterrupted in order that the plaintiff might obtain the privilege afforded by section 22 of the Merchant Marine Act and, in our opinion, such is the proper construction of the statute.

The Act of October 6, 1917 (40 Stat. 392), which permitted foreign-built vessels admitted to American registry under the Act of August 18, 1914 (46 U.S.C.A. §§ 11 and note, 82, 236), to engage in the coastwise trade during the World War and for 120 days thereafter, created a novel privilege that was extended by section 22 of the Merchant Marine Act after the war had ended so as to cover foreign-built vessels which had been admitted to American registry and were owned by citizens of the United States on February 1, 1920. But it was so drawn as to relieve American citizens who at that time might engage in the coastwise trade and to enable them to employ their vessels in that trade even though they were foreign built, only so long as the vessels continued in such ownership. Section 22 must be interpreted in the light of a national policy of long standing, limiting coastwise trade to American built and owned vessels. The strictness of interpretation of legislation relaxing this policy is shown in the recent decision of the Supreme Court in Central Vermont Transp. Co. v. Durning, 294 U.S. 33, 55 S.Ct. 306, 79 L.Ed. 741, affirming a decision of this court [71 F.(2d) 273] in which we traced the history of the above legislative policy. Under sections 4131 and 4132 of the Revised Statutes (46 U.S.C.A. §§ 221, and 11 notes), American registry was confined to American built and owned vessels and no others were entitled to engage in the coasting trade. Likewise under section 4165, Rev. St., if a vessel of American registry was afterwards sold to a foreigner, it could not regain American registry "notwithstanding such vessel should afterward become American property." The clause last quoted first appeared in the Act of June 27, 1797 (1 Stat. 523), and the restriction continued unabated until the passage of the Panama Canal Act of August 24, 1912, (37 Stat. 562, 46 U.S.C.A. § 11 and note), which permitted registry of foreign-built vessels for foreign, but not for the coasting, trade.

In our opinion, section 22, supra, relaxed the rule that vessels engaged in the coasting trade must be American built and owned in favor only of those American citizens who owned ships of American registry on February 1, 1920, and of subsequent purchasers from them provided the latter should also be American citizens. We can see no reason to suppose that the privilege was intended to attach to aliens, foreign-owned corporations who had purchased from persons having the privilege, or to Americans who happened to buy from these aliens. Such a broad interpretation would extend the words "continue in such ownership" beyond their natural meaning and beyond any meaning that would accord with our traditional, if somewhat provincial policy.

The appellant says in its brief that: "Each owner is responsible only for continuity during his ownership, not for that during preceding intervening ownerships. The continuity test is applied only to the immediate owner and he is not charged with what intermediate owners did. In

other words, continuity is measured over one link at a time instead of over the whole chain at once. It relates only to the ownership during the forward period after coastwise operation has begun or been applied for." To support this interpretation of section 22, appellant refers to the first clause of section 18 of the act, 46 U.S.C.A. § 808. But the proviso of that clause permitting foreign-built vessels of American registry owned by American citizens to engage in the coastwise trade "while owned, leased, or chartered by such a person," does not, in our opinion, purport to afford the privilege to persons other than American citizens who have secured American registry of foreign built vessels and have acquired their rights by purchase or charter from the Shipping Board. In other words, it deals with transactions with the Shipping Board and gives vendees of the latter, if citizens of the United States, a right to enroll the vessels they have purchased from the Board for coastwise trade.

Appellant also argues that because the first proviso in the Act of July 2, 1935 (46 U.S.C.A. § 883), which amended section 27 of the Merchant Marine Act, as amended by the Act of April 11, 1935, states the law as appellee contends it existed prior to the amendment, we should conclude that Congress regarded section 22 of the Merchant Marine Act as giving citizens owning foreign-built vessels the right to engage in the coasting trade, whether or not American ownership had been continuous since February 1, 1920. The amended section 27 merely carried forward from original section 27 the general prohibition against shipping merchandise for the coastwise trade in vessels not documented under the laws of the United States and owned by citizens, and then inserted the proviso that, though a vessel had complied with these requirements, it could not engage in coastwise trade if it had been "sold foreign in whole or in part, or placed under foreign registry." The amended section then added certain exemptions from the rigor of the general prohibitions, not relevant here, especially one relating to through transportation of merchandise between points within the continental United States over foreign owned water carriers. The amendment seems to have no bearing on the question before us.

The orders and judgments are affirmed.