No. 16,729

First Circuit

## ST. MARY IRON WORKS v. COMMUNITY MFG. ENTERPRISE, INC.

(January 9, 1929.   Opinion and Decree.)
(February 13, 1929.   Rehearing Refused.)

Brumby & Bauer, of Franklin, attorneys for plaintiff, appellant.

Borah, Himel, Block & Borah, of Franklin, attorneys for defendant, appellee.·

ELLIOTT, J. C. J. LeBlanc, doing business in the name and style of St. Mary Iron Works, claims $500.00 of the Community Manufacturing Enterprise, Inc., with interest and attorney's fees thereon.

He alleges that the defendant operates a sugar factory and that he built for, sold and delivered to it a smokestack, furnishing certain material, and that the defendant agreed to pay him $1046.00 and to also furnish certain material in addition. That plaintiff constructed the smokestack and defendant paid $546.00 on the purchase price, leaving $500.00 evidenced by the note sued on as the balance due. That he has on said account a vendor's lien and privilege on the smokestack.

The defendant admits the alleged indebtedness, but denies that a vendor's privilege exists on the smokestack on account of same.

The question, whether a vendor's privilege exists on the smokestack in favor of the plaintiff under his contract, and as a result of the construction of the stack, is the only matter in dispute.

The contract on which the indebtedness is founded is in the form of a written proposal from the plaintiff to the defendant which reads, so far as pertinent:

"We will increase the diameter of your 48" stack, which is 46' long, to 5' and add 79 feet of 5' stack to it. The pieces increasing the diameter of your present stack to be 3/16 steel; 40' of the addition to be No. 8 steel and the balance to be of No. 10 steel; stack to have band top and bottom and band for eye bolts. Stack to be shipped in two sections and put together at your plant, where increasing of your present stack will also be done, etc."

The defendant accepted plaintiff's proposition in the same terms in which it was made. It says:

"We accept your proposition of increasing our 48" stack, which is 46' long, to 5' and add 79 feet of 5' stack to it," etc.

The proposal, acceptance and evidence of the plaintiff on the sbject shows that plaintiff did not sell defendant the smokestack, nor any material for the purpose

of constructing one; neither did he buy defendant's material. He enlarged and lengthened an old stack, belonging to defendant. In performing the work, he took 46 feet of defendant's old stack apart and inserted in it a strip 36 inches wide, its length of 46 feet. The plaintiff furnished the material for this extra 36 inches in width. This additional width gave the 46 feet a diameter of 5 feet. He then added to this 46 feet, a length of 79 feet of stack, 5 feet in diameter, made of new material, which he furnished for the purpose, thus making the stack 5 feet in diameter and 125 feet long. The work was done at defendant's sugar house and on its premises. The smokestack was then erected by the defendant and attached to its sugar house for its service.

The construction was an undertaking by the job. C. C. Art. 2757:

"A person who undertakes to make a work, may agree either to furnish his work and industry alone, or to furnish also the materials necessary for such work."

In this instance the thing constructed was, from the beginning, the property of the party for whom it was being made. The thing was in defendant's possession during the work of construction and when it was completed. There was no sale to the defendant. It therefore results that no vendor's privilege exists on the smokestack in favor of the plaintiff. Plaintiff however contends, that under the contract, although he did not furnish all of the materials, yet having furnished the greater part, he became the owner of the completed stack, as a result of the law on the subject of the right of accession in relation to movables; citing C. C. Arts. 498, 594, 520, 527, etc.

The law cited is not controlling in this case, because this smokestack was con-structed as the result of an undertaking by the job and by virtue of an agreement, under which it was constructed for and belonged to the defendant. Defendant erected and attached it permanently to his sugar house, making it part thereof and immovable by destination. The law provides that "all such movables as the owner has attached permanently to the tenement or to the building, are likewise immovable by destination." C. C. Art. 468.

The law on the subject of accession has reference to cases where the materials used, belonged to different owners. Here the materials furnished by the plaintiff were for the defendant and became defendant's upon being incorporated in the stack, equally as much as did the materials which were part of the old stack.

We are not aware of any case in which, simply because the obligor has failed in the matter of payment, a contractor by the job has claimed the ownership of the thing constructed, in which a part of the material used in the structure was furnished by the party for whom it was made and the balance by the party doing the work of construction, when the agreement contemplated only the ownership of the thing by the party for whom it was made. But there is considerable jurisprudence, the result of cases where a party has furnished materials and furnished machinery and has claimed for his work and material furnished, a vendor's privilege on the materials that he furnished and endeavored to enforce the privilege by having the material taken from machinery in which it was placed. Such a case is Carlin, Administrator, vs. Gordy, Sheriff, 32 La. Ann. 1285. In that case a Mrs. Berg sold and delivered a sugar mill to Carlin, who erected it on his plantation, thereby making it part of the immovable by destination. The sugar

mill was not paid for and Mrs. Berg seized it and offered it for sale and claimed a vendor's privilege on the machinery in question. The court held that the vendor's privilege existed, but at the same time went on to say:

"The privilege resting upon movables is, in some cases affected by the changes which may take place in the nature or destination of the thing. But such changes must be so radical as to create a new species of thing and destroy that species which originally existed. As, to use the illustration of Cujas, when a pine or cypress log is converted into a ship, or when wool is converted into a garment, or when marble is made into a statue."

. The case was decided in favor of the vendor of the machinery on the ground that the machinery was still in the same condition in which it was at the time it was placed on the immovable, and could, in its complete form, be removed from the immovable without changing its species or form.

The reasoning in this case has never been departed from and has been followed in many subsequent cases. In every case the question has been, whether, as a matter of fact, the species of the thing has been changed or altered by manufacture or construction into something else. The case was followed in Swoop vs. St. Martin, 110 La. 237, 34 So. 426. In that case the plaintiff had placed new shells on defendant's sugar mill rollers, furnished two housings for same, four cast iron quarter boxes, two top journal boxes, four king bolts, etc. The incorporation of materials was not in effect dissimilar from the facts in the case now before the court. The court said in that case:

"As we understand the instant case, the plaintiff repaired the sugar mill of defendant, furnishing what pieces were needed; these pieces being made specially to fit with the old pieces of the mill; and the articles furnished to defendant, if separated from defendant's mill, would be nothing but scrap iron. Under these circumstances we think they have lost their identity of separate movables and become incorporated into defendant's sugar mill."

The court further held:

"Exactly under what circumstances movables are to be considered as having lost their identity is, as a matter of course, a question largely of fact."

In that case the court held that the vendor's privilege had been lost, and that the materials put into the mill could not be removed from the construction with which same had been incorporated.

The second clause of the syllabus reads:

"The privilege of the vendor of a movable ceases to exist, when the movable ceases to be a movable, by being incorporated into the immovable property."

Third:

"Where in pursuance of a contract to repair a sugar house, a foundry takes out old pieces and puts in new pieces of machinery, casting or making the pieces specially for the purpose, the new pieces so added, become merged into the sugar house and lose their character of movables. The rule is different when the machinery sold is complete in itself."

The fact that the machinery was complete in itself is the reason why the privilege was maintained in the case of Carlin, Administrator, vs. Gordy, Sheriff.

In Hibernia Bank & Trust Co. vs. C. F. Knoll Planting & Manufacturing Co., 133 La. 697, 63 So. 288, John H. Murphy had sold to defendant 15 feet of smokestack and some other things susceptible of identification. The 15 foot piece was incorporated with an old one on the premises and the party who furnished the 15 foot

piece, claimed a vendor's privilege on it. The court says with reference to the privilege:

"The bagasse and syrup conveyor and the 15 foot piece or section of smokestack are shown to have been added to and merged into the sugar house and thereby to have become parts of an immovable, to which the lien for their price does not extend." Citing Swoop vs. St. Martin, 110 La. 237, 34 So. 426.

The case In Receivership Augusta Sugar Co., 134 La. 971, 64 So. 870, is similar in principle to Swoop vs. St. Martin. In that case the court reviewed the cases at considerable length and showed the different facts which made necessary the different decisions in the several cases cited.

The above cases are cited in the opinion of the lower court and the same and others in the briefs of the parties. The plaintiff urges that he did not repair an old smokestack, but constructed a new one, using partly, material out of an old stack, of which he became the owner. He urges his position strongly but we differ with him on the question of ownership. He also urges that a vendor's lien and privilege arises out of every sale on credit and is implied by the law without any specific provision therefor. A vendor's lien on a movable is not lost so long as the movable can be detached and identified in the hands of the vendee. This contention should be qualified as held in Swoop vs. St. Martin, 110 La. 237, 34 So. 426, and Hibernia Bank & Trust Co. vs. C. F. Knoll Planting & Mfg. Co., 133 La. 697, 63 So. 288.

In the present case there is no vendor's privilege, because there has been no sale; there is also none, because the pieces of steel furnished by plaintiff, after having been incorporated with other pieces of steel furnished by defendant, have entered into and formed a new species of thing and the pieces of steel have lost their identity. And after the loss of their identity by manufacture into a smokestack, that they were attached by its owner to its sugar house and make a part of the immovable by destination. If the pieces of steel which plaintiff furnished and placed in the stack were to be removed there would be no smokestack; there would be instead two piles of scrap iron, the larger of which would be composed of the pieces of steel which the plaintiff furnished, and the smaller one, of the pieces furnished by defendant.

Our law does not provide for the destruction of a thing constructed under a job contract, in which the materials furnished by the contractor have not been paid for, in order that he may have back the materials that he put into it. The law has provided for his protection in another way.

The judgment appealed from is correct and affirmed; but without prejudice to plaintiff's right to assert a privilege if any he has for his labor and as furnisher of material on any property subject thereto.

The plaintiff and appellant to pay the cost in both courts.

———

ELLIOTT, J. The decree in this case on the subject of costs is amended so as to read as follows:

"It is ordered that the defendant, Community Manufacturing Enterprise, Inc., pay all costs to the filing of the answer, and that all subsequent costs in the lower court be paid by the plaintiff. That all costs of appeal be paid by the plaintiff, St. Mary Iron Works."

As thus amended our former decree is reinstated and made final and a rehearing is refused.