## NORTHWESTERN IMPROVEMENT CO.
### v. ICKES, Secretary of the Interior, et al.
### No. 448.

Circuit Court of Appeals, Eighth Circuit.

April 25, 1940.

M. L. Countryman, Jr., of St. Paul, Minn. (L. B. daPonte, of St. Paul, Minn., on the brief), for petitioner.

Harold Leventhal, Atty., Bituminous Coal Division, Department of the Interior, of Washington, D. C. (Robert L. Stern, Sp. Asst. to Atty. Gen., and Abe Fortas, Gen. Counsel, Bituminous Coal Division, Department of the Interior, of Washington, D. C., on the brief), for respondents.

Before SANBORN, THOMAS, and VAN VALKENBURGH, Circuit Judges.

VAN VALKENBURGH, Circuit Judge.

This is a petition of Northwestern Improvement Company to review and reverse an order of the National Bituminous Coal Commission entered June 23, 1939 in the matter of the application of Northwestern Improvement Company for an order grant-

ing it exemption from any obligation, duty or liability imposed by Section 4 of the Bituminous Coal Act of 1937, 15 U.S.C.A. § 828 et seq., with respect to its sales of bituminous coal to the Northern Pacific Railway Company, on the ground that such sales, there involved, did not and would not constitute interstate commerce in bituminous coal, and would not in any manner directly affect interstate commerce in that commodity.

The petitioner, a New Jersey corporation, is a wholly owned subsidiary of the Northern Pacific Railway Company. Its principal business is the operation of coal mines situated in the States of Montana and Washington. It operates these mines largely for the purpose of providing an adequate supply of coal for use in the operation of its railway. The Northern Pacific Railway Company is a common carrier subject to the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq., and operates a railroad running through the States of Washington, Oregon, Idaho, Montana, North Dakota, Wisconsin and Minnesota. At all times it has owned the entire capital stock of the petitioner, except qualifying shares; and petitioner's officers and directors are officers of the Railway Company. However, it appears that the Railway Company does not exercise direct control over the management and direction of petitioner's affairs.

Petitioner's contentions are (1) that the Bituminous Coal Act of 1937 regulates only commerce in bituminous coal and is not a regulation of interstate commerce generally; (2) that the transportation by a common carrier railroad of its own fuel coal is not commerce and cannot lawfully be any part of the interstate commerce trade; (3) that petitioner's sales of coal to the Railway Company are purely local transactions, which do not constitute interstate commerce in coal; and (4) the fact that the coal sold becomes an instrumentality by which interstate commerce is conducted cannot justify regulation of the terms of sale represented by the Bituminous Coal Act of 1937; and that the Commission was without jurisdiction to submit the transactions in question between petitioner and the Railway Company to regulation as affecting interstate commerce in coal.

The material and practical disadvantage to petitioner of the order complained of is thus stated as the basis for its application for exemption from the obligations, duties or liabilities imposed by Section 4 of the Bituminous Coal Act of 1937: "Unless said order of the Commission is reversed or set aside, petitioner will be compelled to incur substantial expense, not otherwise necessary, in connection with keeping the records, invoices and memoranda, and rendering the reports and filing the documents and papers required by Section 4 of said Bituminous Coal Act of 1937, with respect to all sales and deliveries of coal to Northern Pacific Railway Company, in order to comply with the requirements of said Code, and avoid the penalty tax provided by said Act, and will be compelled to observe the applicable minimum prices fixed under said Code in making said sales and to pay additional income taxes, occupation taxes and other taxes resulting from any increase in its receipts from said sales to its sole stockholder which may be necessitated thereby".

As stated by petitioner in its brief, the questions presented upon this review are solely questions of law. They are: "(1) Whether petitioner's sales of coal to Northern Pacific Railway Company are 'interstate commerce in coal', as defined and subjected to regulation under the Bituminous Coal Act of 1937, and (2) whether the National Bituminous Coal Commission was authorized to subject them to regulation thereunder, if, as petitioner contends, they are purely intrastate transactions".

The following findings of the Bituminous Coal Commission in making the order complained of are not in dispute and have an important bearing upon the questions presented for determination.

"The Railway Company does not exercise any direct control over the Applicant. There is no attempt on the part of the Railway Company to control the business affairs of the Applicant. Applicant functions under the direction of its own Board of Directors and its investments and purchases are made entirely separate from the Railway Company through its own authorized officers, agents, and departments. Its pay rolls, tax liabilities, and other bills are audited and paid out of its own funds by its own authorized auditor whose office is in Seattle, Washington. It is an entirely independent organization.

\* \* \* \* \* \*

"Applicant does not produce coal in the capacity of either trustee, agent, or independent contractor for the Railway Com-

pany, but sells outright to it in arms' length transactions. As prescribed by the Clayton Act, the Railway Company calls for bids from producers upon specifications of its requirements and the applicant becomes a bidder; but owing to insufficient productive capacity of other individual producers, the contract is generally awarded to the applicant".

The Commission therefore concludes that "the ownership alone of the capital stock of a company producing coal, by another company consuming such coal, does not make the company consuming the coal the producer thereof within the meaning of Section 4, pt. II(*l*) of the Act". Nor do we understand that petitioner bases its case upon the claim that because of the ownership by the Railway Company of practically the entire capital stock of petitioner, the coal in question is in effect consumed by the producer. Such a relationship would be inconsistent with the development of the law since the propriety of a carrier's dealing in commodities transported by it and used by it in its interstate transportation was first brought to the attention of the Supreme Court. New York N. H. & H. R. Co. v. Interstate Commerce Commission, 200 U.S. 361, 26 S.Ct. 272, 50 L.Ed. 515. Later, a railroad company was held to be prohibited by the Hepburn Act, approved June 29, 1906, c. 3591, 34 Stat. 584 (49 U.S.C.A. §§ 1, 6, 11, 14–16a, 18, 20, 41) from transporting in interstate commerce commodities which had been manufactured, mined or produced by the carrier or under its authority, excluding from the prohibition, however, commodities manufactured, mined, produced or owned by a bona fide corporation in which the railroad company is a stockholder. United States v. Delaware & Hudson Co., 213 U.S. 366, 415, 29 S.Ct. 527, 53 L.Ed. 836. This construction of that statute contemplated a bona fide distinction between producer and carrier, and such is undoubtedly the principle upon which the relationship was established in the instant case.

It appears, therefore, that the controlling question presented is embodied in the following contentions of petitioner in its brief: (a) Petitioner's sales of coal to the Railway Company are purely local transactions; (b) the transportation by a common carrier railroad of its own fuel coal is not commerce; (c) the fact that the coal sold becomes an instrumentality by which interstate commerce is conducted, cannot justify the type of regulation of the terms of sale represented by the Bituminous Coal Act of 1937.

In National Labor Relations Board v. Crowe Coal Co., 8 Cir., 104 F.2d 633, this court held that a coal mining company in Missouri which sold coal at the mouth of its mine to purchasers who used it to supply customers in states other than Missouri was engaged in interstate commerce. We based our decision upon our understanding of the rulings of the Supreme Court in a number of recent decisions.

"Where goods are purchased in one State for transportation to another the commerce includes the purchase quite as much as it does the transportation". Currin, et al. v. Wallace, Secretary of Agriculture, et al., 306 U.S. 1, 10, 59 S.Ct. 379, 384, 83 L.Ed. 441. To the same effect are Mulford v. Smith, 307 U.S. 38, 47, 48, 59 S.Ct. 648, 83 L.Ed. 1092; and United States v. Rock Royal Co-operative, Inc., et al., 307 U.S. 533, 568, 59 S.Ct. 993, 83 L.Ed. 1446. It appears conclusively, therefore, that interstate commerce includes the transactions of purchase here involved.

The Commodities Clause of the Hepburn Act of June 29, 1906, § 1 (Ch. 359, 34 Stat. 585, 49 U.S.C.A. § 1(8), makes it unlawful for any railroad company to transport free in interstate commerce any article it may own, or in which it may have any interest, except such as may be necessary for its use in the conduct of its business as a common carrier. In Delaware, Lackawanna & Western R. R. v. United States, 231 U.S. 363, 34 S.Ct. 65, 58 L.Ed. 269, the company was charged with shipping hay purchased by it to feed animals employed in and about its coal mines at Scranton, Pennsylvania,—the coal therefrom being sold for use by the public, except the steam coal used as fuel by the railroad itself. The waybills were marked "Freight free—Co. use". The defense claim was that the company had the right to carry thus its own property needed in a legitimate intrastate business. This contention was overruled on the authority of the United States v. Delaware & Hudson Company, 213 U.S. 366, 416, 29 S.Ct. 527, 53 L.Ed. 836, and Armour Packing Co. v. United States, 209 U.S. 56, 28 S.Ct. 428, 52 L.Ed. 681. The conclusion was that [231 U.S. 363, 34 S.Ct. 68, 58 L.Ed. 269], "as the hay belonged to the defendant and was intended

for use in its private business of mining, the transportation over its lines, in interstate commerce, was a violation of the commodity clause" of the Hepburn Act. The statute there under consideration differs, of course, from that now before us; but, to sustain the charge there against the railroad, it was essential that the transportation involved should have been in interstate commerce. Therefore, the conclusion in that case necessarily answers the contention of petitioner that the transportation by a common carrier railroad of its own fuel is not commerce, and cannot justify the type of regulation prescribed by the Bituminous Coal Act of 1937.

It appears that sales to the railway company include both coal transported across state lines and that used within state borders. These interstate and intrastate transactions are so inextricably intermingled, so far as appears from this record, that both must be subject to the operation of the provisions of the Act. Currin v. Wallace, 306 U.S. 1, 11, 59 S.Ct. 379, 83 L.Ed. 441; United States v. Rock Royal Co-operative, Inc., 307 U.S. 533, 569, 59 S. Ct. 993, 83 L.Ed. 1446.

The Bituminous Coal Act of 1937 imposes upon the sale or otherwise disposal of bituminous coal produced within the United States, when sold or otherwise disposed of by the producer thereof, certain excise taxes, and, upon Code members, the keeping of records and the rendering of reports incidental to regulation in compliance with the provisions of the Code with respect to dealings in bituminous coal. The Commission finds that the two fields operated by petitioner produced approximately two and one-half million tons of bituminous coal in a single year; and consumption by railroads as fuel is so great that its exemption from the provisions of the Act, as urged by petitioner, cannot be held to have been intended by the Congress in the absence of express provision to that effect. Nor does the application of the Act depend upon the volume of interstate commerce involved.

"The amount of the commerce regulated is of special significance only to the extent that Congress may be taken to have excluded commerce of small volume from the operation of its regulatory measure by express provision or fair implication". National Labor Relations Board v. Fainblatt,

306 U.S. 601, 59 S.Ct. 668, 672, 83 L.Ed. 1014.

It follows that the Commission's order denying petitioner's application for exemption should be affirmed. It is so ordered.