### GENERAL SHALE PRODUCTS CORPORATION v. STRUCK CONST. CO. et al.

#### No. 108.

District Court, W. D. Kentucky.

March 6, 1941.

Carroll, McElwain & Ballantine, of Louisville, Ky., for plaintiff.

600

William W. Crawford, Crawford, Middleton, Milner & Seelbach, and William Furlong, all of Louisville, Ky., for defendants.

MILLER, District Judge.

The plaintiff, General Shale Products Corporation, brought this action under the Robinson-Patman Act, Title 15 U.S.C.A. § 13, to recover from the defendants Struck Construction Company and Southern Brick & Tile Company $154,740 as treble damages for alleged price discrimination on the part of the defendants contrary to the provisions of the Act. The defendants have filed separate answers raising issues of fact and law. Before the cause was set for trial a pre-trial hearing was held for the purpose of obtaining rulings from the Court on the questions hereinafter referred to.

The City of Louisville Municipal Housing Commission invited bids for a Slum Clearance Project in Louisville looking to the demolition of buildings in the area and the construction therein of new housing facilities. The contract was awarded to the defendant Struck Construction Company. The plaintiff submitted a bid to the Construction Company to furnish it a type of building material manufactured by it, known as Speedbrik. The defendant Southern Brick and Tile Company submitted a bid to the Construction Company to furnish brick and tile. The specifications reserved to the Housing Commission the right to select either Speedbrik or face brick backed by hollow tile. The complaint alleges that the Housing Project could be constructed with the use of Speedbrik at a substantial savings over the face brick backed up by hollow tile, but that by agreement between the Construction Company and the Southern Brick and Tile Company the Southern Brick and Tile Company either reduced its price to the Construction Company so as to substantially lessen the competition offered by the plaintiff, or the Construction Company resold to the Housing Commission brick which it purchased from the Southern Brick and Tile Company at a price lower than the price to which such brick was sold to other purchasers so as to substantially lessen competition offered by the plaintiff. It is charged that by reason of these acts the differential existing in favor of the plaintiff was completely absorbed and the Housing Commission selected face brick backed by hollow tile which destroyed the competition offered by the plaintiff in the use of its Speedbrik, and so destroyed the plaintiff's opportunity to sell its product for use in the project. The plaintiff claims a loss of its manufacturing profit in the sum of $26,580 and further loss of prestige for its material in the sum of $25,000 and seeks damages for treble the total of these two sums. The complaint alleges that the commodities sold by the Southern Brick and Tile Company to the Construction Company were commodities sold for use and consumption in commerce.

The section of the Statute, Title 15 U.S.C.A. § 13, giving rise to the alleged cause of action reads in part as follows: "It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, where such commodities are sold for use, consumption, or resale within the United States or any Territory thereof or the District of Columbia or any insular possession or other place under the jurisdiction of the United States, and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them: Provided, That nothing herein contained shall prevent differentials which make only due allowance for differences in the cost of manufacture, sale, or delivery resulting from the differing methods or quantities in which such commodities are to such purchasers sold or delivered."

The first question raised by the defendants is that neither the Struck Construction Company nor the Southern Brick & Tile Company was engaged in commerce, as is required by the statute in order to make them subject to the provisions thereof. The complaint does not state specifically when the acts complained of occurred, but it is assumed for the purposes of this discussion that they occurred in the year 1939. Both the answer of the Southern Brick and Tile Company and the evidence taken show that while that company sold its bricks almost exclusively in the state in 1938 and 1939 it did make a few inter-

state sales and shipments. It has been held several times recently that the power of Congress to regulate interstate commerce is plenary and extends to all such commerce be it great or small. Santa Cruz Fruit Packing Co. v. National Labor Relations Board, 303 U.S. 453, 467, 58 S.Ct. 656, 82 L.Ed. 954; National Labor Relations Board v. Fainblatt, 306 U.S. 601, 606, 607, 59 S.Ct. 668, 83 L.Ed. 1014; National Labor Relations Board v. Prettyman, 6 Cir., 117 F.2d 786, decided February 13, 1941; Wood v. Central Sand & Gravel Co., D.C.W.D.Tenn., 33 F.Supp. 40. The evidence also showed that the Struck Construction Company was incorporated under the laws of the state of Kentucky and was qualified to do business in Kentucky, Tennessee, Indiana and Ohio, and that during the several years preceding the time under consideration it had completed construction jobs of substantial proportions in all of those states. No work had been done in 1939 in any state other than Kentucky although bids had been submitted upon large projects in other states. The company is one of the largest, if not the largest, construction company in Kentucky and undertook jobs of substantial proportions in the middle West and South regardless of state lines when the project offered prospects of good business for the company. In its actual construction work its general policy was to enter into a contract to furnish a complete building according to plans and specifications for a lump sum payment. Sub-contracts would be made with sub-contractors both in and out of the State in which the work was being done and materials would be purchased from dealers both in and out of the state, depending upon where an advantageous price could be obtained. The company's bid to the Housing Commission on the job under consideration was $1,731,000, and the work comprised, in addition to the demolition of standing buildings, the construction of fifty-nine building units and something in excess of eight-hundred livingroom units. The Construction Company contends that construction work of this character within the City of Louisville, Kentucky, is not engaging in commerce in that the work is entirely local in character. It cites in support of this contention the decisions in Browning v. Waycross, 233 U.S. 16, 17, 34 S.Ct. 578, 58 L.Ed. 828; General Railway Signal Co. v. Virginia, 246 U.S. 500, 38 S.Ct. 360, 62 L.Ed. 854; Kansas City Steel Co. v. Arkansas, 269 U.S. 148, 46 S.Ct. 59, 70 L.Ed. 204. I am unable to agree with plaintiff's contention that these decisions are not applicable to the present situation, but in view of the more liberal interpretation of the commerce clause, given by the Supreme Court during the past few years, I doubt if those decisions correctly reflect the view of the Court at the present time. The present construction of the commerce clause is to be used in the decision of the present case. Where commodities are bought in one state for use in another state the sale is just as much a part of inter-state commerce as is the transportation after sale. Dahnke-Walker Milling Co. v. Bondurant, 257 U.S. 282, 290, 42 S.Ct. 106, 66 L.Ed. 239; Lemke v. Farmers' Grain Co., 258 U.S. 50, 54, 42 S.Ct. 244, 66 L.Ed. 458; United States v. Rock Royal Co-Op., 307 U.S. 533, 568, 59 S.Ct. 993, 83 L.Ed. 1446. Both purchases outside of Kentucky and purchases inside of Kentucky went to furnish the materials going into the construction of the Housing Project. The mingling of a local activity with an interstate activity does not interfere with the Federal power to regulate the activity in its entirety. Currin v. Wallace, 306 U.S. 1, 59 S.Ct. 379, 83 L.Ed. 441; Mulford v. Smith, 307 U.S. 38, 59 S.Ct. 648, 83 L.Ed. 1092; Northwestern Improvement Co. v. Ickes, 8 Cir., 111 F.2d 221. The business although essentially local may nevertheless have such ramifications as to effect interstate commerce and to be subject to Federal legislation under the commerce clause of the Constitution art. 1, § 8, cl. 3. National Labor Relations Board v. Jones & Laughlin Steel Corporation, 301 U.S. 1, 38 through 40, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352; National Labor Relations Board v. Fruehauf Trailer Co., 301 U.S. 49, 57 S.Ct. 642, 630, 81 L.Ed. 918, 108 A.L.R. 1352; National Labor Relations Board v. Friedman-Harry Marks Clothing Co., 301 U.S. 58, 57 S.Ct. 645, 630, 81 L.Ed. 921, 108 A.L.R. 1352; Consolidated Edison Co. v. National Labor Relations Board, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126; National Labor Relations Board v. Fainblatt, 306 U.S. 601, 59 S.Ct. 668, 83 L.Ed. 1014; United States v. Darby Lumber Co., 61 S.Ct. 451, 85 L.Ed. ——, decided by Supreme Court of the United States on February 3, 1941. In view of those decisions and in view of the business of the Construction Company as generally carried on, I am of the opinion that it was engaged in commerce and that its activities in the present case were in the

course of such commerce within the provisions of the statute above referred to.

The second question presented for decision is whether the Clayton Act, 38 Stat. 730, as amended by the Robinson-Patman Act, prohibits the concessions made by the Struck Construction Company to the Louisville Municipal Housing Commission, since the Louisville Housing Commission is a governmental agency. The evidence showed that the bid of the Construction Company was based upon a price of $20 per thousand for brick, and that the total contract price would be either decreased or increased depending upon the cost of the brick eventually selected by the Housing Commission. Brick was quoted by several manufacturers at a price range between $18.25 per thousand and $16.75 per thousand. The price quoted by the Southern Brick & Tile Company was $18 per thousand. Even at a price of $16.75 per thousand there was a substantial differential in favor of using Speedbrik offered by the plaintiff. The Construction Company came to the conclusion that it had underestimated its cost in laying Speedbrik which would make it unprofitable to the Construction Company if Speedbrik was used. It was considered advisable to use face brick even though it be necessary to reduce the cost to the Commission below $16.75 per thousand. The Construction Company prevailed upon the Southern Brick & Tile Company to furnish the face brick at $16.75 a thousand, being the same price quoted by other brick manufacturers, and it in turn offered to furnish the face brick to the Housing Commission at $14.09, which price eliminated the differential in favor of Speedbrik. This arrangement was carried through and face brick furnished by the Southern Brick & Tile Company was selected and used.

The statute makes it unlawful for any person to discriminate in price "between different purchasers of commodities." This means it is illegal for a seller to discriminate between two parties buying the same product from him under similar conditions. The report of the Senate Committee on the Judiciary, which considered this amendment to the Clayton Act stated the purposes of the bill as follows: "The bill proposes to amend Section 2 of the Clayton Act, so as to suppress more effectually discriminations between customers of the same seller not supported by sound economic differences in their business position or in the cost of serving them."

The report of the House Committee on the Judiciary uses substantially the same language. The Act accordingly applies to commercial sales on the part of those who deal in the commodity under consideration to purchasers from such a dealer. The Struck Construction Company is not a manufacturer or a jobber of brick nor is it in the true sense of the word a dealer in brick. It does not buy brick for the purpose of resale. Its purchase of brick in the present case was to enable it to carry out an existing contract obligation with the Housing Commission, it was not for the purpose of a subsequent resale. The sale of brick is not mentioned in any part of the contract with the Housing Commission. I do not believe that the transfer of the title to the brick from the Construction Company to the Louisville Housing Commission by reason of the brick being used in the construction of the Housing Project was a sale of the brick to a customer, as contemplated by the Act; the transfer of title was merely an incident in the completed performance of the contract calling for the construction of the buildings included therein. The contract was essentially a construction contract, not a contract of sale. Compare St. Mary Iron Works v. Community Mfg. Enterprise, 9 La.App. 743, 119 So. 564; Nisky v. Childs Co., 103 N.J.L. 464, 135 A. 805, 50 A.L.R. 227; Carlson, Holmes & Bromsted v. M. I. Stewart & Co., 246 App.Div. 522, 283 N.Y. S. 430; Racklin-Fagin Const. Corp. v. Villar, 156 Misc. 220, 281 N.Y.S. 426; York Heating & Ventilating Co. v. Flannery, 87 Pa.Super. 19; Sidney Stevens Implement Co. v. Hintze, 92 Utah 264, 67 P.2d 632, 111 A.L.R. 331.

Accordingly, the provisions of the Act do not apply.

I am also of the opinion that even if the transaction could be construed as a sale of brick by the Struck Construction Company to the Housing Commission it would not be within the purview of the Act because the Act does not apply to sales to the government, state or municipalities. The statute provides that such a discrimination is unlawful "where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce." This means, according to the discussion of the bill at the time of its consideration and en-

actment, that the parties must be in competition with each other. Neither the government nor a city in its purchase of property considered necessary for the purposes of carrying out its governmental functions is in competition with another buyer who may be engaged in buying and reselling that article. There is nothing in the Act which attempts to establish the price at which an article can be sold to a purchaser; it merely provides that a seller can not discriminate by selling it to one purchaser for less than he sells it to another purchaser who is in competition. Accordingly, a sale at a reduced price is not illegal unless it is made for the purpose of discriminating between competitive buyers. After the passage of the Act, Attorney General Cummins rendered an opinion that the Act did not apply to government contracts. This opinion followed the decision of the Supreme Court in the early case of Dollar Savings Bank v. United States, 19 Wall. 227, 239, 22 L.Ed. 80, where it was stated, "It is a familiar principle that the King is not bound by any act of Parliament unless he be named therein by special and particular words. The most general words that can be devised (for example, any person or persons, bodies politic or corporate) affect not him in the least, if they may tend to restrain or diminish any of his rights and interests. He may even take the benefit of any particular act, though not named. The rule thus settled respecting the British Crown is equally applicable to this government, and it has been applied frequently in the different States, and practically in the Federal courts."

See also Emergency Fleet Corporation v. Western Union Telegraph Co., 275 U.S. 415, 425, 48 S.Ct. 198, 72 L.Ed. 345, Mr. Patman, co-author of the Act, in his recent book "The Robinson-Patman Act," published by the Ronald Press Company of New York appears to acquiesce in this opinion. See Question No. 220 on page 168, and Chapter 18, pages 205–207. I understand that similar opinions have been given by the Attorney Generals of Minnesota and Wisconsin, although they have not been made available to me. On the other hand, the Attorney General of California has given a contrary opinion. The plaintiff contends that the opinion of the Attorney General of the United States should not be relied upon at the present time because it was rendered before the amendment of May 26, 1938, which provided "nothing in sections 13, 13(a), 13(b), and 21(a) of this title, shall apply to purchases of their supplies for own use by schools, colleges, universities, public libraries, churches, hospitals, and charitable institutions not operated for profit." Title 15 U.S.C.A. § 13c. It is argued that since certain transactions were exempted from the provisions of the Act, which exemptions do not specifically include purchases by the government, state, or city, the Act should be considered as applying to all transactions not thus specifically exempted. I do not so construe the exemption provision. At the time of its enactment the Act had been construed by the Attorney General as not applying to governmental purchases. If Congress had intended to change such interpretation of the Act, it would undoubtedly have done so by specific language rather than by inference subject to subsequent judicial construction. Plaintiff's contention would have much more merit if the exemption provision had been enacted at the same time as of the passage of the Act. Coming at a later time, I construe it as adding to existing exemptions, rather than as repealing them by inference.

Counsel will submit for entry an appropriate order as provided by Rule 16 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, conforming to the foregoing views of the Court.