The Honorable Armil O. Curran State Representative 210 West Main Street Clarksville, Arkansas 72830-3019
Dear Representative Curran:
This is in response to your request for an opinion regarding the Robinson-Patman Act and a proposed amendment to the Arkansas Purchasing Law. Your letter states that House Bill 1044 amends A.C.A. § 19-11-206 to add certain organizations to the definition of "local public procurement unit." You note that local public procurement units are allowed to enter into cooperative purchase agreements and procure items utilizing state contracts issued by the Office of State Purchasing. See A.C.A. §19-11-249 (Repl. 1994). Your specific question regarding the proposed amendment to A.C.A. § 19-11-206 is as follows:
 Are rural development authorities and nonprofit corporations providing fire protection services to a rural area or providing drinking water to the public in a rural area providing "traditional government services" such that the procurement of items by them from cooperative purchasing agreements would not violate the price discrimination restrictions within the Robinson-Patman Act?
It is my opinion that the purchase of items through cooperative purchasing agreements by rural development authorities, nonprofit corporations providing fire protection services to a rural area, and nonprofit corporations providing drinking water to the public in a rural area is most likely not violative of the Robinson-Patman Act.
As you have noted, the Robinson-Patman Act, 15 U.S.C.A. §§ 13, 13a, 13b,21a (1973), prohibits price discrimination. 15 U.S.C.A. § 13(a) provides in part:
 It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, where such commodities are sold for use, consumption, or resale within the United States . . ., and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them . . .
The aim of the Act is, in part, to prevent a large buyer, competing in the same market with a small buyer from gaining a discriminatory preference, and hence a competitive advantage because of the larger company's greater purchasing power. Bouldis v. U.S. Suzuki Motor Corp.,711 F.2d 1319 (6th Cir. 1983). In your letter, you comment that the Robinson-Patman Act "exempts state purchases for consumption in `traditional governmental functions.'" This statement, however, is not entirely accurate. In fact, the United States Supreme Court has stated that the Robinson-Patman Act by its terms does not exempt state purchases. Jefferson County Pharmaceutical Association, Inc. v. AbbottLaboratories, 460 U.S. 150 (1983).
Although the United States Supreme Court has not squarely decided whether Congress intended for the Robinson-Patman Act to apply to governmental purchases for consumption in traditional governmental functions, the Attorney General of the United States has from the outset taken the position that there is an implied governmental exemption. 38 U.S. Op. Att'y Gen. 539 (1936). The Attorney General specifically concluded that the Act is not applicable to government contracts for supplies (i.e. special prices on contracts for supplies). Id. In 1941, it was concluded that the Act did not apply to the purchases of either state or municipal governments. General Shale Products Corp. v. Struck Const. Co.,37 F. Supp. 598 (W.D. Ky. 1941), aff'd on other grounds, 132 F.2d 425 (6th Cir. 1942), cert. denied, 318 U.S. 780 (1943) (entity involved was a municipal housing commission). The court commented that neither the government nor a city in its purchase of property considered necessary for the purposes of carrying out its governmental functions is in competition with another buyer who may be engaged in buying and reselling that article. Id. In 1980, the Seventh Circuit Court of Appeals concluded that the Army and Air Force Exchange Service (AAFES) is a governmental instrumentality entitled to immunity from the Robinson-Patman Act.[1]Champaign-Urbana New Agency, Inc. v. J.L. Cummins News Co., Inc.,632 F.2d 680 (7th Cir. 1980). Since government in its "traditional functions" does not compete in the same markets with private enterprise, it is conceptually difficult to fashion a rationale for applying the Robinson-Patman Act to these activities.
In Jefferson County, supra, the Supreme Court was faced with the limited issue of whether state purchases for the purpose of competing against private enterprise in the retail market (purchases for resale in competition with a private retailer) were exempt from the Robinson-Patman Act. The court concluded that where a state chooses to compete in the private retail market, its purchases are not exempt from the proscriptions of the Robinson-Patman Act. Justice O'Connor, in a dissenting opinion joined by Justices Brennan, Rehnquist, and Stevens, commented that the general consensus in the legal and business communities is that sales to governmental entities are not covered by the Robinson-Patman Act regardless of the use to which the governmental entity puts the questioned purchases.
With regard to a rural development authority's purchase of items through cooperative purchasing agreements, it is my opinion that rural development authorities are in all likelihood governmental entities and purchases necessary for their governmental functions appear to be exempt from the Robinson-Patman Act. Rural Development Authorities are created by the General Assembly and are "activated" by the county quorum court.See A.C.A. § 14-188-104 (1987); Op. Att'y Gen. No. 94-029. Further, A.C.A. § 14-188-109 (1987) provides that the "rural development authority shall constitute a public body corporate and politic, exercising public and essential governmental functions." Thus, it seems clear that purchases made by the rural development authorities would be considered governmental purchases. In addition, it is my opinion that as long as a purchase is necessary for the rural development authority to carry outs its governmental functions, the purchase is exempt from the Robinson-Patman Act. See A.C.A. §§ 14-188-101 et seq. (describing governmental functions and purposes of rural development authority).
As to the purchase of items through cooperative purchasing agreements by nonprofit corporations providing fire protection services to a rural area and nonprofit corporations providing drinking water to the public in a rural area, it is my opinion that these entities serve a quasi-governmental function, and a "traditional" one at that. It is arguable that legislative action including these organizations for eligibility for cooperative purchases may imbue these non-profit entities with sufficient characteristics of a government body to entitle them to eligibility for exemptive treatment under the Robinson-Patman Act.
It is also possible that under certain circumstances purchases of these nonprofit corporations through cooperative purchasing agreements may be exempt from the Robinson-Patman Act pursuant to the Nonprofit Institutions Act, 15 U.S.C.A. § 13c (1973). The Nonprofit Institutions Act provides:
 Nothing in the [Robinson-Patman Act] shall apply to purchases of their supplies for their own use by schools, colleges, universities, public libraries, churches, hospitals, and charitable institutions not operated for profit.
Although "charitable institutions" is not defined under the Nonprofit Institutions Act, the Ninth Circuit Court of Appeals relied upon the term "charitable" as it is used for purposes of the tax code and the law of charitable trusts. In De Modena v. Kaiser Foundation Health Plan,743 F.2d 1388 (9th Cir. 1984), cert. denied, 469 U.S. 1229, the court concluded that a health maintenance organization was a "charitable institution" within the meaning of the Act. The court noted that the organization was exempt from income taxes as a charitable institution, and the court commented that nonprofit organizations which promote health care are considered charitable under the law of charitable trusts. In order to determine whether a particular nonprofit corporation that provides fire protection services or drinking water to a rural area is a "charitable institution," the particular facts and circumstances surrounding the formation and operation of the organization would need to be consulted.
In any event, extensive analysis of whether these entities are exempt from the Act is probably unnecessary since it is difficult to imagine a circumstance where a rural water provider or a volunteer fire department could "substantially lessen competition" or have a "tendency to create a monopoly" as is required for Robinson-Patman to be invoked. In sum, it is my opinion that the purchase of items through cooperative purchasing agreements by rural development authorities, nonprofit corporations providing fire protection services to a rural area, and nonprofit corporations providing drinking water to the public in a rural area is most probably not precluded by the Robinson-Patman Act.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Warren T. Readnour.
Sincerely,
WINSTON BRYANT Attorney General
WB:WTR/cyh
[1] The AAFES operates exchanges on Army and Air Force bases in the United States and overseas; an exchange is a retail store for those in or connected with United States military forces.